EDWARD WILLIAM SEWELL *v.* ALFRED HENNEN, Syndic of the creditors of John Willcox, an insolvent.

ALFRED HENNEN, Syndic, &c. *v.* EDWARD WILLIAM SEWELL.

The certificate of a recorder of mortgages declaring that no mortgages exist on certain property, is *prima facie* evidence that none exist. The burden of proving the contrary, is on the party who contests the correctness of the certificate.

Where a contract between a mortgagor and his mortgage creditors recites, that the former " shall be at liberty to sell any part of the mortgaged property, on paying to their agent a proportion of the purchase money equal to the proportion which the whole mortgaged security bears to the whole mortgage debt, and that thereupon their agent shall release the mortgage on the property so sold," the agent is authorized to release the mortgage only in the event of his having previously received the stipulated portion of the price of the part so sold.

Where in the sale of property subject to mortgages, it was *stipulated that the* mortgages should be erased within the shortest delay, and that the notes given for the price should be deposited with the cashier of a certain bank there to remain till the erasure of the mortgages, when they were to be delivered to the vendor, a demand, made on the vendor personally at his domicil, to comply with his obligation to erase the mortgages, is sufficient to put him *in mora.* It was not necessary to make any demand of the cashier at the bank.

APPEALS from the District Court of the First District, *Buchanan*, J.

*Lockett* and *Micou, Benjamin* and *Grymes*, for the appellants. The certificate of a recorder of mortgages that no mortgage exists

on particular property, is only *prima facie* evidence of the fact. It may be rebutted. *Dreux* v. *Ducournau*, 5 Mart. 625. *Lafarge* v. *Morgan*, 11 Mart. 518. The authority to release being conditional, and the condition not having been complied with, the release was null, and there was no proof of any subsequent ratification.

*McHenry*, for the syndic.

BULLARD, J. The contract of sale, which the plaintiff Sewell seeks to rescind by the present action, contained the following clause or condition ;—after reciting the existence on the lots sold, of various mortgages, special and judicial, the act proceeds : " and which said encumbrances, the said John Willcox hereby obligates himself to pay and raise, in the shortest delay ; and to assure the said purchaser that the same shall be complied with, the said Willcox hereby agrees, that the notes, or the money therefor, given in payment for said property, shall be deposited in the hands of Raboteau, the cashier of the Improvement Bank, and there remain until the encumbrances as herein recited shall be erased from the records of the office of the recorder of mortgages of this city, and a clear certificate to that effect produced to said cashier, who shall then deliver said notes or money to the said Willcox, or his order." The deed bears date the 19th of January, 1837, and the last note was payable two years after date.

The vendor having made a surrender to his creditors, Alfred Hennen was appointed their syndic.

On the 17th June, 1843, the plaintiff Sewell, addressed a letter to his vendor, in which he demands of him to cause the mortgages to be erased according to the stipulations of their contract, and tendering and offering to pay the full sum due according to the contract, and to perform all the obligations imposed on him by said act, on his complying with the demand contained in the letter, and informing him that if he should fail to comply with the demand within three days, suit would be brought to rescind the sale.

Willcox, in answer, writes to the plaintiff, that his affairs had passed to Alfred Hennen, Esq., as syndic under the law, and that he had fulfilled all his (Willcox's) obligations towards him, the

mortgages having been raised, and a clear certificate from the recorder of mortgages obtained and presented to him and to the bank. He is, therefore, requested to hand over the money to Mr. Hennen.

The syndic at the same time writes to the plaintiff, in answer to the same letter, that he had caused the mortgages to be duly cancelled, and he exhibits to him a certificate of the recorder of mortgages to that effect ; he further informs him, that he is ready to comply with all the stipulations in the act of sale, and to receive the purchase money.

Two days after the date of this last letter, the syndic writes again, and informs the plaintiff, that if any reasonable or possible doubt can exist as to the correctness of the cancelling of the mortgages, he is ready to give good and sufficient real security that it shall be ratified by all the parties ; and that he is ready to receipt for the money, and distribute it under the order of the court in payment of the creditors, who will be fully satisfied.

After these preliminary demands and notices, which clearly amount to a putting in default under the Code, according to our interpretation of it in the first suit to rescind this same contract decided last year, (5 Robinson, 83,) this suit was instituted, demanding that the contract should be rescinded and annulled.

The syndic answers, that the mortgages in question have been duly raised, the conditions of the contract complied with, and that the plaintiff justly owes the purchase money.

This action was commenced on the 13th July, 1843.

On the 20th of the same month, the syndic took out an order of seizure and sale against the lots, to make the money secured by the same mortgage, on representing to the court, that the mortgages outstanding at the time of the sale had been extinguished, and producing the notes given by Sewell for the price, and a certificate of the recorder of mortgages that the same no longer existed on the records of his office.

The execution of this order of seizure was arrested by an injunction, which was granted upon the opposition of Sewell on the following grounds :

1st. That a suit was already brought, and then pending, to rescind the contract of sale.

2d. That no sufficient authentic evidence was adduced to authorize the issuing of the order of seizure and sale.

3d. That the debt had been extinguished; that the notes in question were given for the price of the lots, which were encumbered with mortgages to an amount exceeding their value; that Willcox obliged himself to raise said mortgages in the shortest delay, and that the price was not due nor demandable until after the same should have been cancelled and extinguished, which has not been done by any person having authority to do so ; that, consequently, the sale is null, and the property reverted to Willcox, and he tenders possession of the same.

4th. That the certificate of the recorder of mortgages was obtained by unlawful means, the recorder having been induced by the syndic, and one Paul Tulane, and Lucius C. Duncan, to grant it, when in fact, the said parties were not in law authorized or empowered to grant the discharge for the parties whom they assumed to represent, nor to require the erasure of the mortgage.

5th. Because the possession of the notes was obtained by unlawful means. That by express agreement they were to remain in deposit in the hands of Raboteau, cashier of the Improvement Bank, until the mortgages should be legally raised and cancelled, whereas they have not been raised and cancelled, but the possession of the notes acquired by presenting said certificate so improperly issued and obtained.

Thus both cases, in the nature of *cross* actions, present the same questions. They were tried by the same court, and judgments were rendered in each at different times, in one case dissolving the injunction, and for the defendant in the action of recision; and Sewell has appealed from both judgments. They have been argued together in this court.

Two questions alone appear to us necessary to be examined. First, whether the evidence offered on the trial shows, that the mortgages which Willcox engaged to raise and extinguish, have been so raised and extinguished by competent authority ; and, secondly, whether the syndic has been put legally *in mora*, so as to authorize the plaintiff to maintain his action to rescind the contract of sale.

I. The certificate of the recorder of mortgages is undoubtedly *prima facie* evidence, that no mortgage exists in the name of Willcox upon the lots, and, consequently, that he has complied with his contract. It is, therefore, incumbent on Sewell to show, that the certificate was given in error, and that the recorder erased the mortgages without sufficient authority. 5 Mart. 625. 11 Ib. 462.

The evidence upon which he proceeded, is before us in the record. It is contained in an act passed before W. Y. Lewis, notary public, between Josiah Barker, represented by his attorney in fact, Jacob Barker, Paul Tulane, as duly authorized by the trustees of John Willcox and Jacob S. Barker of New York, by power dated the 10th day of October, 1834, and deposited in the office of Carlisle Pollock, on the 15th day of November, 1831, Lucius C. Duncan, attorney at law and of record of Clark and others for a judgment rendered in the United States District Court, in March, 1836, for $16,778 25, and Alfred Hennen, syndic of the creditors of Willcox. This act enumerates various mortgages which had existed on the lots in favor of different persons, but especially that in favor of Clark, Hunt and Phillips, of New York, trustees of the creditors of Willcox and Barker, for about twenty-five thousand dollars, and a general judicial mortgage resulting from the judgment above mentioned, and duly recorded. The parties then declare, that they do release and discharge the above recited encumbrances and mortgages, including the special one in favor of Josiah Barker, given to indemnify him as surety of Willcox on an appeal bond; and they authorize the recorder of mortgages to erase the same from the records of his office. It is further agreed, that Hennen, the syndic, shall collect whatever money could be realized from the sale of the property sold by Willcox to Sewell, and from the endorsers of Sewell's notes and otherwise from Sewell, and that he shall divide the same among the parties to this release, and interested therein, rateably in the same proportion as the proceeds of the sale would be divided by the sale of the sheriff, under proceedings under said mortgages, extending previous privileges of the parties to the *fund* in lieu of the *property*.

The authority of Tulane is shown by the contract between

Willcox and the trustees of his New York creditors, and is the same instrument which gave rise to much discussion between the parties in the case of *Willcox* v. *His Creditors.* See 2 Robinson, 27.

The clause in that instrument which is relied on as showing Tulane's power to release the mortgages, is as follows : " And it is further agreed, by and between the said parties hereto, that said Willcox is to be at liberty to sell any part or portion of the real estate so placed under the mortgage, on his paying to the said trustees, or their attorney or substitute, a proportion of the purchase money equal to the proportion which the whole mortgaged security bears to the whole mortgage debt, and that *thereupon* the said parties of the first part, or their attorney or substitute, shall release or extinguish the mortgage, lien, or encumbrance, on such property so sold."

That Tulane was the agent of the trustees is abundantly shown by the testimony of Mr. Duncan who proves, that he has for a long time acted under the power of attorney. But the question is not whether he was agent, but rather, what was the extent of his authority, and whether the clause in the contract above recited gave him the power to release or extinguish the mortgage, without receiving previously some part of the price for which the property might be sold. The agency of Tulane was not questioned in the case of *Willcox* v. *His Creditors.* In that case we held, that his principals were not liable in damages to Willcox, in consequence of Tulane's having refused, in that instance, to release the mortgage on another part of the property, which Willcox had sold, without having previously received a part of the price. His authority to do so *on that condition,* was not contested.

But much reliance is placed by the counsel for the appellee upon the following expressions used by the court, in *Lafarge* v. *Morgan et al.:* " That the certificate of the register of mortgages might be contradicted ; but to destroy the credit attached to it, the party who attacks its verity must do more than offer proof which leaves that verity doubtful. He must show it to be false. He must show, that the officer acted on evidence that was untrue ; not merely that which was irregular." 11 Martin, 462.

It is certainly true, that the *means* by which the recorder becomes satisfied of the extinction of a mortgage is of little importance, if it turn out on trial that such was the fact, even if he should act upon verbal and *ex parte* statements. But if it should turn out upon investigation, that the fact was otherwise, or, in other words, that the statements were *untrue*, then the certificate will not avail. So, if a person assuming to act as agent for the mortgagee, authorizes the register to cancel the mortgage, and it should turn out upon investigation, that he was not the agent for that *purpose*, and to *that extent*, then the evidence upon which the register should have proceeded would be untrue, and the case come strictly within the principles settled in the case of *Lafarge* v. *Morgan et al.*

But it is said, that the trustees ran no risk; and that *the arrangement* is favorable, and even most advantageous to them. This may be true, but it is for them to judge of it, and not us. In the present case, the fund in the hands of the syndic for distribution may be perfectly safe, and a change of the *lien upon the lots*, to a *privilege on the price*, may offer as ample guarantees to the creditors, as to retain the mortgage until they shall have received a part of the price. But the parties have a right to stand upon their contract; and, in the present controversy, each appears disposed to hold the other to the strictest law. The authority given to Tulane to release the mortgage on such parts of the property as Willcox might sell, appears to us to be a conditional one, and depended upon his having previously received a part at least of the price. It was that view of the contract which we took in the case of *Willcox* v. *His Creditors*, and that construction saved the creditors, in the shape of damages, the whole amount of the debt. If a ratification had been shown, it would have been quite different; but when an agent has acted beyond the scope of his authority, we cannot presume that his act will be ratified.

II. But it was further urged in argument, that Willcox, or the syndic, has not been put legally in default, and that the demand should have been made of Raboteau, at the Improvement Bank.

We are not of this opinion. The notes, it is true, were to remain on deposit, and Sewell had the faculty, by the contract, of paying his notes and the money was to remain in deposit until

the mortgages were all released. But it does not follow, that any demand on Willcox, with a view to a recision of the contract, was to be made at any other place than at his domicil, and personally.

The counsel asks for a delay under article 2042 of the Civil Code, which provides, that when the resolutory condition is an event not depending on the will of either party, the contract is dissolved of right ; but in other cases it must be sued for, and the party in default may, according to circumstances, have a further time allowed for the performance of the condition ; and he is confident that, within a short time, a ratification of the act of Tulane can be procured. Even admitting that this case comes within the principle established by that article of the Code, yet it appears to us, that the circumstances attending this transaction do not authorize us to extend the delay. It is seven years since the sale took place, and the vendor engaged, in the shortest delay, to cause all the mortgages to be released. He escaped last year a judgment rescinding the contract at the suit of Sewell, upon grounds exclusively technical, and so technical, that it is not easy to give a common sense reason for the conclusion to which we came ; and we could only say, and say it too with an expression of regret, *sed ita lex scripta est.* The same party now brings himself, by his previous demand and offer on his part to comply with his contract, within the rigid and shadowy interpretation which we thought ourselves compelled to give to those provisions of the Code, and we do not think ourselves authorized to require him to give any further delay. He has a right to stand upon his contract, more especially as there has not been a partial performance on the part of the trustees ; nor indeed could there be, as the vendor engaged to release all the mortgages—an obligation essentially indivisible.

It is, therefore, ordered, in the first case of *Sewell* v. *Hennen, Syndic of Willcox,* that the judgment of the District Court be avoided and reversed, and that the contract of sale, set forth in the petition, be rescinded and annulled ; that the defendant restore to the plaintiff his promissory notes given for the price of said property ; and that the defendant pay the costs of both courts. And in the second case of *Hennen, Syndic,* v. *Sewell,* it is further ordered and decreed, that the judgment of the District Court

be reversed ; and ours is, that the injunction be reinstated and made perpetual, at the costs of *Hennen, Syndic,* as aforesaid ; and that he also pay the costs of this appeal.