(54 South. 968.)

No. 18,266.

GARVEY v. CONNER.

(April 24, 1911.)

*(Syllabus by the Court.)*

MORTGAGES (§ 566*)—FORECLOSURE—SEVERAL NOTES—PRIORITY.

Where five notes of even date, for like amounts, paraphed by a notary public to identify them with a certain act of mortgage for that same amount, are sued upon in one suit, the court will consider the evidence in the record and determine which note was issued first, and declare it to be first in rank to bear upon the property described in the act of mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1630; Dec. Dig. § 566.*]

Appeal from Civil District Court, Parish of Orleans; Geo. H. Théard, Judge.

Actions by W. S. Garvey, William Schroeder, E. T. Murphy, Thomas G. King, and Rose Sherwood against James M. Conner. The actions were consolidated. Judgment for plaintiffs on rule for payment of certain moneys to W. S. Garvey, and the other plaintiffs appeal. Reversed, and rule discharged.

J. Zach Spearing and Wm. McL. Fayssoux, for appellant Schroeder. Merrick, Lewis, Gensler & Schwarz, for appellant Murphy. Dart, Kernan & Dart, for appellant King. W. J. & P. F. Hennessey, for appellant Sherwood. Dinkelspiel, Hart & Davey, for Louis Knop, Civil Sheriff. Edward P. Foley, for appellee Garvey.

SOMMERVILLE, J. The plaintiffs in these five several suits, which suits were consolidated in the trial court, sued out executory processes against a certain piece of property described in a certain act of mortgage, copy of which is filed in the record. The five notes held by plaintiffs were identified by paraphs on the face of each note with that act of mortgage. The property mortgaged belonged to Robert J. Maloney, although the title stood in the name of the defendant, James M. Conner. The notes and the mortgage securing them bear the signature of Conner. The notes were all acquired by plaintiffs from Maloney for valuable consideration.

The property was sold under two writs of executory process, and purchased by William Schroeder, one of the plaintiffs. The sheriff has ruled the five plaintiffs into

court to compel William Schroeder to pay into his, the sheriff's, hands the purchase price of the property, and to show to whom the proceeds are to be paid.

The rule was made absolute, and the money ordered paid to one of the plaintiffs, W. L. Garvey. The other four plaintiffs have appealed.

Maloney, who owned the property mortgaged, was at one time an attorney at law, a notary public, a banker or depositary of funds, agent, real estate holder, etc.

He has been disbarred. He has surrendered his commission as notary public. His property is gone, and he has been sentenced to the penitentiary for a term.

Conner, the defendant, was an old and intimate friend of Maloney, and a constant visitor at the latter's office. He is a witness in this cause, and testifies that he was without means; that the several pieces of property standing in his name during the past few years belonged to Maloney; that he signed blank acts and notes for Maloney in and out of the latter's presence on the simple intimation or request of Maloney; that he had no recollection of these notes and acts, or the number of them, and he knows nothing of their real or intended destination. He says:

"He (Maloney) simply told me that he purchased property in my name on a certain day, and wanted me to give him some notes so that he could obtain the money, and I never questioned it. I always signed them in blank and the acts in blank. I signed anything he asked me without hesitation, without question, and without knowing what for, or what use was to be made of the documents."

The documentary evidence shows that Maloney sometimes signed Conner's name to public acts. Conner appears to be singularly indifferent to his good name.

The plaintiffs in the cause had each one parted with $3,830 or $3,850 by giving it, or the equivalent, to Maloney for the five notes of like amount without reservation or question of any kind. These notes appear to be secured by one act of mortgage upon a certain piece of property which has been sold herein, and which has yielded about $2,000 net.

An examination and analysis of the evidence in this case must be critical, severe, and attended with suspicion and doubt of every witness and document appearing herein. We shall have to indulge in theories, assume certain positions, and presume certain conditions to have existed. The task is a disagreeable one. Under these circumstances, it appears almost impossible to find sufficient and competent evidence in the record upon which to base a judgment; and we have been tempted to leave these five foolish victims where they have placed themselves and to order the proceeds to be divided among them.

An examination of the evidence convinces us that the five notes were not all issued at one time. It therefore becomes our duty to determine which note was issued first, and to recognise it as bearing upon the property mortgaged, and to order the proceeds to be paid to the holder of that note.

All the notes, as before stated, were signed by Conner. Conner denies that he signed the note held by William Schroeder, one of the plaintiffs; but we disregard his testimony. He bases his denial mainly upon the assertion that he always signed Jas. M. Conner and never J. M. Conner as his signature appears on the William Schroeder note. The evidence shows that he did not always sign Jas. M. Conner. Several of the Maloney acts are signed, and a few checks are indorsed, "James M. Conner."

A careful examination of the signatures and indorsement on the Schroeder note with the admitted signatures of Conner show them to have been written by the same hand. It could not reasonably be otherwise. A forger of Conner's signature would certainly

have written, "Jas. M. Conner," the ordinary signature of Conner, and not "J. M. Conner." And such forger would not have attempted to impose, and could not have imposed, such a note upon Maloney, and have him, Maloney, paraph it, so as to identify it with one of Maloney's own acts of mortgage. More particularly, as Maloney was well acquainted with Conner's signature, and the note bore upon his, Maloney's, own property. Such conditions are unbelievable. They cannot be.

The result of our examination and comparison of handwritings is further strengthened by the testimony of William McL. Fayssoux, a reputable member of the bar, who showed the note in question, together with some others, to Conner, asking him to "look over them, please, and tell me if these are your signatures or not," and Conner answered: "Yes; they are all my signatures."

Our conclusion is still further strengthened by the testimony of Mr. Benjamin Ory, another trustworthy and careful member of the bar, who was sworn and examined as an expert in the case. He is positive that the same person signed and indorsed the Schroeder note that signed the other notes in this case, as well as other signatures admitted to have been made by Conner. He says:

"Even a layman would see the absolute similarity from the beginning to the end. * * * Absolutely no imitation. * * * It is the genuine, flowing, usual signature, 'J. M. Conner.' I am positive of that."

Maloney issued these notes at the various times when he wanted money. When he issued the mortgage and first note, January 16, 1906, he wanted $3,830 or thereabouts. He did not at that time want more than that amount, or he would have made the mortgage for a larger sum. His clients do not appear to have ever examined the property mortgaged. He obtained the desired money from one of these plaintiffs.

From which one of the plaintiffs did Maloney first obtain the money on these notes, and to whom did he give the first note?

William Schroeder says that Maloney obtained $3,830 in cash money from him on or about January 16, 1906, and that he, Schroeder, received the note sued upon from Maloney at that time. But this testimony is not as positive as we would like to have as to the exact date when William Schroeder acquired the note.

E. T. Murphy says that Maloney obtained from him $102 and two other notes in exchange for the note sued upon by him in the latter part of January, 1906.

Mrs. Sherwood, and witnesses in her behalf, say that Maloney obtained her money and other notes in March, 1906, for the note sued upon by her. But Mrs. Sherwood contradicts herself, and is contradicted by her witnesses.

Thomas J. King, representing the Teutonia Bank & Trust Company, the real party in interest, admits the bank received the note sued on by him from Maloney November 1, 1907, as collateral on a personal note of Maloney for $6,403, of same date, November 1, 1907. William S. Garvey says that Maloney obtained $3,830 in cash from him, and gave the note sued upon in November, 1907. He subsequently said that he exchanged notes with Maloney and gave him a check for $1,600, the difference, and that that check had been destroyed. His testimony is very uncertain.

The Teutonia Bank and William S. Garvey cannot assist in arriving at a conclusion as to who received the first note because they testified that they received their notes from Maloney in November, 1907, some 11 months after maturity. Both notes bear indorsements declaring that interest was paid January 16, 1907, and were renewed on that date.

The note held by William Schroeder is the only one which appears to be entirely regular

on its face. It looks like all other mortgage notes which have been regularly issued.

The other four notes suggest irregularities on their faces. These four notes were printed by "Miller & Brandao, Printers, 522 Gravier, N. O.," while the act of mortgage and the note of Mr. Schroeder were printed by "William Miller, Printer, 522 Gravier St." The bound volumes of acts of Maloney show that he began the use of blank acts printed by Miller & Brandao only on or after April 2, 1906. The use of the Miller stationery prior to April 2, 1906, is not conclusive to show that the four notes were issued after April 2, 1906; but it is a link in the chain of evidence to be noticed. It may have been that Maloney exhausted his stock of notes printed by William Miller before he exhausted his stock of acts printed by Mr. Miller, and that he had a supply of Miller & Brandao blank notes in January, 1906. But the record is silent on this point, except that four of the plaintiffs hold notes dated January 16, 1906, on blanks printed by Miller & Brandao, while Mr. Schroeder's note is on the stationery of William Miller, printer, just as is the act of mortgage with which it is identified.

The note held by Mr. Murphy was not apparently written at the same time, or by the same person, that the act of mortgage was with which it purports to be identified.

It is for $3,850, and not for $3,830, as is the act of mortgage. This is a suspicious circumstance. The act was certainly not before the maker of the note when the note was prepared, or the mistake in the amount would not have been made. The blank paraph is filled in with black ink, where red ink is ordinarily used. Red ink was used in the paraphs on three of the other notes sued upon. It seems to us that this note was issued to Mr. Murphy during the year 1907, after its maturity. It would further appear that the note was issued at the same time that the indorsement was written thereon, for the indorsement and the written part of the paraph on the note were written by the same person, with the same pen, and the same ink. This conclusion is partially sustained by the testimony of Mr. Murphy. When asked when he purchased the note, he stated "the latter part of January, 1906." He explains that Maloney never paid him any interest in cash, but that he used the interest which was due by adding cash to it to acquire another note from Maloney. He was asked: "How often did you do that with this note?" He answered, "Only once," whereupon he was examined as follows:

"Q. As I understand, when the interest would become due on this note, instead of Mr. Maloney giving you the cash, he would make a credit on the back of the note of the amount of interest, and give you some other mortgage note?
"A. Yes, sir.
"Q. For that interest and anything else you might give him—whether a mortgage note or cash?
"A. Yes, sir.
"Q. As far as this note is concerned, that transaction took place only once?
"A. Yes, sir.
"Q. Only once on this note?
"A. Yes, sir; that's all on that note."

Subsequently Mr. Murphy stated he had collected interest twice after he purchased the note—i. e., in January, 1907, and January, 1908—but his testimony on this point is contradictory, and it cannot be relied upon.

We conclude that interest was paid to Mr. Murphy only one time after having acquired this note, and that was on January 16, 1908, as appears in and by the second indorsement on the note, and that the first indorsement of payment of interest and renewal were placed thereon at the time that the paraph was filled in, and before the note was issued to Mr. Murphy.

The note held by Mrs. Sherwood is very irregular on its face. It is for the same amount as the act of mortgage. It is of even date therewith; but the paraph is dated January 16, 1907. One would scarcely write

"1907" for "1906" in January, 1906. The paraph was certainly filled out in 1907, at the same time, by the same person, with the same red ink, as was the indorsement dated January 16, 1907, crediting payment of interest and renewing the note for one year.

Mrs. Sherwood contradicts herself on her examination, and she is contradicted by her witnesses. Her testimony is vague and uncertain. It is very unsatisfactory. The note held by her was issued by Maloney in 1907.

The note held by Mr. King for the Teutonia Bank & Trust Company is irregular on its face. It is for $3,850, while the act of mortgage with which it purports to be identified is for $3,830. The person who prepared the note did not have the act of mortgage before him, or he would not have made the mistake in the amount. There is also some difference in the typewriter or ribbon used to fill out the act from the one used to fill out this note. The filling in of the paraph is not in red ink, as is usual, but in black ink, and made by the same person, and with the same pen and ink as is the indorsement on the back of the note, dated January 16, 1907, noting the payment of interest and renewal of the note. The note and indorsement were evidently made at the same time for the purpose of imposing upon the Teutonia Bank & Trust Company, and it is the loser thereby.

The note held by Mr. Garvey is suspicious on its face, because in the paraph the note is identified with an act of mortgage of date "16th. day of January, 1907," which has been corrected to read: "1906." That mistake was hardly likely in January, 1906. If "1906" is written in January, 1907, the mistake is explainable, and may be charged to forgetfulness or carelessness; but the writing of "1907" for "1906" in January, 1906, is not to be explained except by the person making the mistake. No evidence in the record explains it. The indorsement of payment of interest and extension for one year on the back of the note is dated January 16, 1907, and is written in red ink, by the same person, and apparently at the same time as was the paraph on the face of the note. The note, paraph, and first indorsement of payment of interest were evidently made at the same time and for the purpose of imposing upon Mr. Garvey, and he is the loser thereby.

We conclude that William Schroeder, plaintiff, is the holder of the original note issued by James M. Conner or Robert J. Maloney, sued on in this case, and that he is entitled to retain the proceeds of sale of the property mortgaged, less the charge for selling same.

It is therefore ordered that the judgment appealed from be reversed and set aside, and that the rule filed herein by the civil sheriff of date November 22, 1909, be discharged.