PROYOSTY, J.
Maurice Levy, the plaintiff, caused executory process to issue upon a mortgage given him by Mrs. Desposito, and the mortgaged property to be seized and sold. Jacob Nienaber filed a third opposition, claiming a superior right over the proceeds of the sale by virtue of a vendor’s privilege and prior mortgage. The contest is between Levy and the third opponent.
The history of the matter is as follows: Mrs. Desposito, desiring to create mortgage paper which she might negotiate, made a sale of her property to one Raine, part credit and part cash; the credit part being represented by a $1,800 note. Some days later Raine made a resale to her, she assuming, as part of the price, the payment of the $1,-800 note given by Raine. She then negotiated this note to Robert J. Maloney, the notary before whom the acts of sale and resale had been passed. She paid interest on this note for two years to Maloney, and then, desiring to retire it, borrowed money for that purpose, and charged the notary before whom the act was passed by which the loan was made to her, Mr. Loomis, to make the payment .to Maloney. Maloney received the payment, but, instead of surrendering this $1,800 note, surrendered a counterfeit of it. Mr. Loomis, thinking that the genuine note had been paid, issued a certificate for the cancellation of the inscription of the mortgage securing it, and the cancellation was made. Later Mrs. Desposito borrowed money from Levy and gave him the mortgage he is now foreclosing. In making this loan Levy acted upon the faith of a certificate of mortgages, which did not show the existence of the vendor’s privilege and mortgage securing this Raine $1,800 note, the inscription of which had been canceled. Maloney transferred to Nienaber, the third opponent, the genuine $1,800 note. Whether before or after the payment made to him by Loomis, notary, is one of the questions in the case. The payment was made in January, 1905. Nienaber claims to have acquired the note in April, 1904. The indorsements of the payments of interest on it of July 16, 1903, July 16, 1904, and July 16, 1905, are in the handwriting of Maloney. Nienaber never called upon Raine or Mrs. Desposito for the payment of interest." He says that he re *129 ceived the interest' of 1904 and subsequent years from Maloney. After this and other Maloney frauds had transpired, and Maloney had been sent to the penitentiary, Nienaber sued out executory process. In his petition for this executory process he alleges that Mrs. Desposito, in reacquiring the property, had assumed the payment of this $1,800 note, and he prayed that both she and Raine be notified as defendants. The two latter sued out injunctions; she on the ground that the note sued on was spurious, and that the genuine note had been paid by her to Maloney through Loomis, notary, and, at all events, was prescribed; he on the ground of prescription. Nienaber filed answers to the injunctions, thereby converting his executory process into ordinary process. He asked for personal judgment against both Raine and Mrs. Desposito. The case went to the Court of Appeal, which sustained the prescription as against Raine, whose obligation stood upon the note,, but overruled it as to Mrs. Desposito, whose obligation stood upon the personal assumption of the payment of the debt, prescriptible only by 10 years, and gave judgment against her. That suit was still pending when Levy instituted his foreclosure proceeding, and when Nienaber filed his first petition o'f third opposition.
[1] The erroneous cancellation of the inscription of the mortgage securing this genuine note can, of course, have no effect upon, or, in other words, cannot prejudice, any rights Nienaber might have, and no contention is made in that regard.
[2] The ease is before this court a second time. On the first appeal it was remanded for further proceedings. 130 La. 765, 58 South. 564. On this second trial one of the subscribing witnesses to the act of sale by Mrs. Desposito to Raine denied that he had been a witness to the act, and that the signature to the act purporting to be his was really such. This has led the learned counsel for Levy to contend that the said act is an act under private signature, it not having been passed before two witnesses, and that being such it could not be validly recorded without its execution having been either acknowledged by the vendor before a notary, or the signature to it having been proved by the affidavit of one of the subscribing witnesses, nor without its having been transcribed in full in the conveyance book. A sufficient answer to this contention is that the third opponent is not relying upon that act or its registry in the present suit, but upon the act of sale by Raine to Mrs. Desposito, in which this genuine $1,800 note is fully and accurately described, and is assumed to be paid by Mrs. Desposito. True Mrs. Desposito, in her act of purchase, did not give a mortgage to secure this note; but that is immaterial, since a vendor’s privilege resulted from her assumption of the debt, by operation of law, without need of any express stipulation to that effect, and it is this vendor’s privilege which the third opponent is seeking to enforce.
[3] Counsel further contends that such an assumption was not a stipulation pour autrui, and did not constitute a new or, rather, additional obligation, prescriptible only by 10 years. The contrary was expressly decided in the case of Scionneaux v. Waguespack, 32 La. Ann. 283. That case and others cited in it were not overruled by the cases of Citizens’ Bank v. Miller, 44 La. Ann. 206, 10 South. 779; Loeber v. Railroad, 41 La. Ann. 1151, 5 South. 60; Allen & Currey v. Shreveport Waterworks Co., 113 La. 1091, 37 South. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471. What was said in the latter cases has to be read in the connection in which it was said.
The genuine note is dated July 16, 1902. The notarial paraph upon it reads:
“Paraphed ne narietur by me, notary, to identify same with an act of sale and mortgage passed before me this (16) (24)th day of July, 1902. New Orleans, July 16th, 1902. Robert J. Maloney, Notary Public.”
*131 The “16” in parentheses is in red ink, like the rest of the paraph. The “24” in parentheses is written in black ink over the “16.” The date of the act of sale was in like manner changed from the 16th to the 24th. The learned counsel for Levy objected to these documents being received in evidence until these alterations had been satisfactorily accounted for, and now contends that these documents cannot be considered as evidence until this satisfactory account shall have been given, and sayg that Raine was unable to account for these alterations on the witness stand, and, “he not being gifted with prophesy, it is no wonder.” To us it seems that it takes no prophet to tell that these alterations were made by the notary. Evidently he had intended to pass the act on the 16th, and had prepared his papers accordingly, but passed it oh the 24th, and in changing the dates omitted to make the change in the date of the note and in one of the dates of the paraph.
There can be no serious denial of a $1,800 note having been executed to represent the credit part of the 'sale to Raine, and of the payment of this note having been assumed by Mrs. Desposito as part of the price of the sale to her. And there can be no serious denial of the note sued on being the note thus assumed; for Raine testified to that effect, and the only rival note that has turned up is manifestly a forgery — a bungling piece of work — made payable, for instance, at a bánk not in existence at its date.
[4, 5] The petition of third opposition does not allege'the prior registry of third opponent’s claim. The nearest approach to this essential allegation is the following:
“That petitioner’s note and mortgage is prior in date and rank to the mortgage held by Maurice Levy.”
And (in supplemental petition):
“That petitioner is the holder and owner of the note aforesaid, and by virtue thereof is entitled to be paid by preference,” etc.
But these allegations are merely the statement of a conclusion of law; the fact itself upon which that conclusion is based, namely, the prior registry, is not stated. Not having alleged this registry, the third opponent should not have been allowed, over the objection of Levy, to prove it; and without its proof the third opponent has no case.
The only question must, therefore, be whether this suit shall be remanded a second time to afford the third opponent another opportunity to mend his case, or shall be nonsuited, or shall be dismissed. This third opposition has already been pending a very long time, and there should be an end to litigation, especially in a case like this, where mortgage rights are being enforced.
[6] We are therefore disinclined to another remand or to a mere nonsuit; and all the more so from the unsatisfactory condition of the evidence upon the point of whether the third opponent acquired this note before Maloney had palmed off the counterfeit upon Loomis.
The strong evidence to the contrary carried by the indorsement on the note of the payment of the interest of July 16, 1906, in the handwriting of Maloney, can be met by Nienaber only with his own testimony; and however sincere this testimony may in reality be, we should hesitate very much to allow it to overbear all the contrary inferences and probabilities in the case, especially in view of the questionable shape in which it appears in the record.
On the second trial he testified positively to the date when he acquired the note, and produced the stub of the check which, he says, he gave in making the acquisition; whereas he had testified on the first trial as follows:
“I was doing business in 1902 with Whitney Central Bank, and I went to the Teutonia Bank, and then I also went over to the Metropolitan Bank with my private account. I paid Mr. Maloney $1,800 for this note with a check.
*133 “Q. Have you hunted for the check you gave him?
“A. Yes, sir; but I could not find it.
. “Q. Have you a copy of the stubs of your chock book?
“A. No, sir.
“Q. What did you do with them?
“A. Well, after three years I generally destroy them. I burnt them up at my place of business.”
The check thus said to have been given was for only $1,600, which is another discrepancy.
“Can you explain how your memory is so much better after the lapse of two years and a half than it was when you testified [October 1909]?
“A. The only thing I can recall is that I had no other $1,600 note, and I am positive that this is the transaction.
“Q. Then your only reason for saying that this $1,600 was given for this note is that you had no other $1,600 transaction, or any approximating that?
“A. Yes, sir.”
Just one month before testifying on the first trial of the case, Nienaber had offered in evidence the check book containing the stub in question in a suit of his against another party on a note purchased by him from the same Maloney.
And after all has been said, and even conceding that he acquired this note before said payment, the incontestible fact yet remains that he has himself to blame in large measure for the unfortunate position in which he and Levy find themselves; for by accepting payment of interest from Maloney, who was not a debtor on the note, he afforded the latter the opportunity to practice the fraud from which has resulted the loss that must now be visited either upon him or upon the wholly innocent Levy, who parted with his good money upon the faith of a clear certificate of mortgages.
[7] We have not overlooked the contention of counsel that Nienaber must be presumed to have acquired this note before maturity, because every one of the three indorsements in the handwriting of Maloney of the payment of interest is accompanied by an extension of payment or renewal of the note for one year; and .the legal presumption is that the holder of a negotiable note acquired it before maturity. That presumption, even conceding that the maturity of a note may be changed without the consent of the maker, cannot overcome the inference of Maloney’s having been the holder of the note on July 16, 1905, arising from the indorsement made by him upon it as of that date.
The judgment appealed from is set aside, and the third opposition is rejected. The third opponent to pay all costs.
SOMMEBVILLE, J., takes no part herein.