148 So. 658

**FREELAND v. CARMOUCHE (LAPLEAU et al., Interveners).**

No. 31947.

May 1, 1933.

Rehearing Denied May 29, 1933.

Carmouche & Carmouche, of Crowley, for appellant Succession of W. J. Carmouche.

Pugh & Buatt, of Crowley, for appellee Thomas B. Freeland.

Chappuis & Chappuis, of Crowley, for Philip Lapleau.

O'NIELL, Chief Justice.

This is a pathetic case. It reveals some fraudulent transactions on the part of an attorney at law who has died, and who enjoyed a splendid reputation throughout his long career—twenty-eight years—as a member of the bar.

On the 21st of March, 1930, W. J. Carmouche, a lawyer, who died at his residence in Crowley, La., on the 27th of October, 1930, signed an act of mortgage before H. Gordon Brunson, notary public, and two witnesses, to secure the payment of a promissory note for $4,000. The note also was signed by Carmouche, was made payable to his own order, on or before the 21st of March, 1931, and was indorsed by him. The mortgage was made, not in favor of a named individual,

but in favor of the future holder of the note, which was described accurately in the act of mortgage, and was paraphed "Ne Varietur" by the notary public to identify it with the act. Carmouche negotiated the note on the day on which it was made—or possibly four days later—by delivering it to Thomas B. Freeland, as collateral security for a note for $2,000, which Carmouche owed to Freeland. He already held, as collateral security, a mortgage note made by a third party and owned by Carmouche; and it was at Carmouche's request that the mortgage note for $4,000 was taken by Freeland in substitution for the other mortgage note, which Freeland then returned to Carmouche. The act of mortgage securing the $4,000 note was recorded on the 22d of March, 1930—the next day after it was made.

On the 25th of March, 1930, Carmouche sent by registered mail, from Crowley, addressed to Dr. Minnie I. Faulk, at Monroe, La., an exact duplicate of the $4,000 mortgage note which Carmouche had delivered to Freeland. Carmouche, in a letter accompanying the duplicate or sham mortgage note, requested Dr. Faulk to accept the note as collateral security for a note for $2,500 which Carmouche owed to Dr. Faulk, and to release and return to him other collateral securities which Dr. Faulk then held. Carmouche, in his letter to Dr. Faulk, falsely represented that the $4,000 note which he inclosed was the one referred to in the act of mortgage, dated the 21st of March, 1930, of which he inclosed a certified copy. He inclosed also, in his letter to Dr. Faulk, a mortgage certificate showing that there was no other mortgage on the property. Dr.

Faulk received the registered letter on the 27th of March, 1930, and, believing that the sham mortgage note of $4,000 was the only and original note described in the act of mortgage, accepted it in substitution for the collateral securities which she already held, and which she then returned to Carmouche. The sham mortgage note of $4,000 was actually signed and indorsed by Carmouche, and was actually paraphed by the notary public, H. Gordon Brunson, for identification with the act of mortgage dated the 21st of March, 1930. Brunson, who was also an attorney at law, and closely associated with Carmouche, and who died soon after Carmouche died, facilitated him in his fraudulent transactions, by leaving in his possession blank forms of notarial acts, signed by Brunson, as notary public, and blank promissory notes, with blank forms of paraphs printed across their face and signed by Brunson as notary public. These blank instruments, signed by Brunson as notary public, were found in Carmouche's law office after his death. Neither he nor Brunson lived to testify in this suit.

On the 11th of April, 1930, Carmouche, or some one for him, presented to a deputy clerk of court, ex officio deputy recorder, a triplicate copy of the mortgage note of $4,000, dated the 21st of March, 1930, and thereby procured the cancellation of the mortgage securing the note which Freeland then held, and of which Dr. Minnie I. Faulk held the sham copy. The note, which was presented for cancellation of the mortgage, corresponded in every detail with the note described in the act of mortgage, and was signed and indorsed with the genuine signature of Carmouche, and paraphed with the genuine signature of Brunson, as notary public, for identification with the act of mortgage. The deputy recorder, after canceling the mortgage, in good faith, marked the note "Canceled," and attached it to the original act of mortgage in the archives of his office. In his testimony given in this suit, he said that he could not remember positively that Carmouche was the one who brought the note to him and procured the cancellation of the mortgage, but that, according to his recollection, Carmouche was the one who brought the note to him and procured the cancellation of the mortgage. The note was not marked "Paid," nor was the signature or indorsement erased or scratched out. In fact, there was no evidence or indication whatever that the note had been out of the possession of Carmouche from the time it was made until it was presented to the deputy recorder for cancellation of the mortgage. Freeland had no knowledge of the cancellation of the mortgage securing the payment of his note of $4,000 until after the death of Carmouche. Dr. Minnie I. Faulk also was ignorant of the cancellation of the mortgage until after the death of Carmouche.

On the 11th of April, 1930—the day on which the mortgage securing the payment of the $4,000 note was fraudulently canceled —Carmouche placed on record a mortgage on the same property to secure the payment of several notes aggregating $4,500. The mortgage and notes were dated the 7th of April, 1930. The act was signed by Brunson, as notary public, and by the same witnesses who had signed the mortgage securing the $4,000 note, dated the 21st of March, 1930. The new

notes, for $4,500, were payable to the order of Carmouche and indorsed by him, and the mortgage was made not in favor of a named mortgagee but in favor of any future holder of the notes; and they were paraphed "Ne Varietur" by Brunson, as notary public, to identify them with the act of mortgage.

On the 14th of April, 1930, Carmouche applied to Philip Lapleau for a loan of $4,500 on the mortgage notes dated the 7th of April, 1930, and showed Lapleau a certified copy of the mortgage securing the payment of the notes, and a certificate showing that the act of mortgage was recorded on the 11th of April, 1930, and a mortgage certificate showing that there was no other mortgage on the property. At the same time, Brunson furnished Lapleau an abstract of title and an opinion declaring that Carmouche's title to the property was good. On these representations, Lapleau, in good faith, made the loan to Carmouche for $4,500; and Brunson delivered the mortgage notes to Lapleau, and wrote the check for $4,500 for Lapleau to sign, and, when Lapleau had signed the check, Brunson received it from Lapleau for delivery to Carmouche. All of this, of course, was without the knowledge of Freeland or of Dr. Faulk.

When the $4,000 mortgage note held by Freeland matured, which was after the death of Carmouche and Brunson, Freeland brought this foreclosure proceeding against the administrator of the estate of Carmouche. A few days later the mortgage notes for $4,500 held by Lapleau matured, and he also instituted executory proceedings against the administrator of the estate of Carmouche.

Lapleau filed also an opposition to Freeland's foreclosure proceeding, prayed for an injunction to prevent the sale of the property in that proceeding, and obtained a temporary restraining order, on the ground that Freeland's mortgage was canceled, and that Lapleau therefore had the only mortgage on the property. Dr. Minnie I. Faulk intervened in Lapleau's injunction proceeding, and averred that she held the true and original note of $4,000 secured by the mortgage dated the 21st of March, 1930; that Freeland therefore had no mortgage; and that her mortgage was canceled without her knowledge or consent. Freeland, answering Lapleau's opposition and Dr. Faulk's petition of intervention, averred that he (Freeland) held the true and original note of $4,000 described in the act of mortgage dated the 21st of March, 1930, and that the mortgage was canceled without his knowledge or consent. He made the administrator of the estate of Carmouche, and the recorder, parties defendant, and prayed to have the cancellation annulled and the mortgage reinstated on the record as of the date of the original inscription. He prayed also that the restraining order should be dissolved and that Lapleau should pay damages therefor. Lapleau, answering Dr. Faulk's petition of intervention, averred that, if she held the true and original mortgage note for $4,000, her mortgage was extinguished by being canceled—especially in so far as he (Lapleau) was concerned, because he had acquired his mortgage in good faith, relying upon the public record, which showed that the $4,000 mortgage was canceled. The administrator of the estate of Carmouche, answering Lapleau's injunction proceeding and Dr. Faulk's petition of intervention, op-

posed Lapleau's claim, and joined hands, first, with Freeland, and, alternatively, with Dr. Faulk, and prayed that, after the payment of either the $2,000 note held by Freeland or the $2,500 note held by Dr. Faulk, the balance of the proceeds of the sheriff's sale of the property should be paid to the succession of Carmouche, up to $4,000, and that only the surplus, if any, should go to Lapleau, to be applied on his mortgage notes of $4,500. The recorder answered that he had no interest in the matter beyond the desire to obey whatever order the court might see fit to render in the premises.

By consent of all parties, the case was tried not merely on the rule to show cause why the writ of injunction, prayed for by Lapleau, should not be issued, but on the merits of the case, and on all of the issues presented. Judgment was rendered accordingly.

The contest between Dr. Faulk and Freeland, as to who held the true and original mortgage note for $4,000, was decided in favor of Freeland, because his note was issued by Carmouche before hers was. She was given a judgment for the amount of her $2,500 note, with recognition of her right of pledge on the collateral securities which she held (other than the mortgage note for $4,000), but without a mortgage on the property of the estate of Carmouche.

The contest between Freeland and Lapleau, as to whether Freeland still had a mortgage on the property, was decided in favor of Freeland, on the ground that the canceling of his mortgage was done without his knowledge or consent. The recorder was ordered to reinscribe the mortgage, as of the date when it was recorded originally, in order

that Freeland might be paid the amount of his $2,000 note, by preference over other creditors. The temporary restraining order obtained by Lapleau was dissolved, but without damages. Lapleau was recognized as having a second mortgage on the property, to secure the payment of his notes for $4,500, and as entitled to payment out of the proceeds of the sale of the property after payment of the $2,000 note held by Freeland.

The demand of the administrator of the estate of Carmouche, to be paid—to the prejudice of Lapleau—the amount of the difference between the amount of Freeland's $2,000 note and the amount of his $4,000 mortgage note, was rejected.

Lapleau has appealed from the judgment in so far as it declares that Freeland has a mortgage.

The contest between Dr. Faulk and Freeland appears to have passed out of the case by her failure to appeal. The issue was decided correctly, on the principal announced in Garvey v. Conner, 128 La. 489, 54 So. 968, and in 41 C. J. 675, that, in a contest between, or among, the holders of two or more similar promissory notes, all but one of which notes were issued fraudulently, and all paraphed for identification with one and the same act of mortgage securing only one such note, the court must determine from the evidence in the case which note was issued first, and must declare it to be the genuine note, secured by the mortgage, and declare the others not secured by the mortgage. A promissory note is issued when it is first delivered, complete in form, to a person who takes it as a holder; and it is delivered when the possession of it is transferred, actually or

constructively, from one person to another. Act No. 64 of 1904, § 191, pp. 173, 174. The $4,000 note held by Freeland was delivered to him by Carmouche either on the 21st or on the 25th of April—more likely on the 21st; but, even though it may have been delivered as late as the 25th of April, it was delivered before the duplicate of it was delivered to Dr. Faulk. The mailing of the note to her by Carmouche on the 25th of April would have been a delivery to her on that date if she had already agreed to accept the note in lieu of the collaterals which she then held, and if she had directed Carmouche to mail the note to her. But, inasmuch as Dr. Faulk had not agreed to accept the note, or instructed Carmouche to mail it to her, the delivery to her was not made until she actually received and accepted the note. 8 C. J. pp. 204 and 205, § 335. The delivery, therefore, was made on the 27th of April, 1930 —at least two days after Freeland had received one of the duplicate notes.

■■ The judge decided correctly also in his ruling that Freeland could not be deprived of his security by the cancellation of the mortgage without his consent, even though Lapleau acquired his mortgage in good faith, relying upon the public record showing that there was then no other mortgage on the property. The rule seems arbitrary, but it is now well settled by the decisions of this court that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record. Dreux, Executor, v.

Ducournau, 5 Mart. (O. S.) 625; Lafarge v. Morgan, 11 Mart. (O. S.) 462, 527; Macarty v. Landreaux, 8 Rob. 130; Hennen v. Sewell, 8 Rob. 216; Delavigne v. Gaiennie, 11 Rob. 171, 173; Mrs. De St. Romes v. Widow Blanc, 20 La. Ann. 424, 96 Am. Dec. 415; Horton v. Cutler, 28 La. Ann. 331; Mechanics' Building Association v. Ferguson, 29 La. Ann. 548, 550; Morris v. Cain's Executors, 34 La. Ann. 657, 665; Levy v. Desposito, 133 La. 126, 62 So. 599; Gallagher v. Conner, 138 La. 633, 70 So. 539; Fisher v. Trimble, 161 La. 343, 108 So. 666.

It is argued for Lapleau that the doctrine of the decisions cited is applicable only where the note which was presented to the recorder for cancellation of the mortgage was a forged note, and not to a case where the note presented to the recorder for cancellation of the mortgage was actually signed and indorsed by the mortgagor. The decisions do not recognize any such distinction, and we do not see why such a distinction should be made. A duplicate note issued as Carmouche issued the note on which he procured the cancellation of the mortgage securing the note held by Freeland was not any more the note described in the act of mortgage, or secured by the mortgage, than it would have been if it had been a forged note.

A case like this does not depend upon whether the recorder was justified in believing that the note which was presented to him for cancellation of the mortgage was the genuine note described in the act of mortgage, and secured by the mortgage. The case depends upon whether the holder of the negotiable note, secured by the mortgage, did

in fact consent to have his mortgage canceled.

In the earliest of the cases cited, Dreux, Executor, v. Ducournau, 5 Mart. (O. S.) 625, it was said:

"Although the register of mortgages certifies that the land is free of mortgages, if it appear that the order of court, by which a mortgage was ordered to be cancelled, was obtained in the absence of the mortgagee [meaning without his being a party to the proceeding], the purchaser is not compelled to pay the price."

In Macarty v. Landreaux, 8 Rob. 130, it was said:

"A mortgage, duly recorded, can be erased from the books of the recorder only by the consent of the mortgagee, or by a judgment decreeing such erasure. C. C. 3335, 3336 [now articles 3371 and 3372]. It is the property of the mortgagee, and cannot be destroyed by any act of the recorder."

In the case of Mrs. De St. Romes v. Widow Blanc, 20 La. Ann. 424, 96 Am. Dec. 415, it was said:

"The erasure and cancellation of a mortgage on the record, by the recorder will not bind the mortgagee where it has been done without his knowledge or consent, and he may enforce his mortgage rights against the property mortgaged even after it has passed into third hands in good faith."

In Morris v. Cain's Executors, 34 La. Ann. 657, 665, it was said:

"An inscription duly made can be erased only with the creditor's consent, or by a valid decree of court contradictorily obtained."

In Gallagher v. Conner, 138 La. 633, 70 So. 539, it was held:

"Where the owner of lands created successive mortgages thereon, through successive persons interposed as straw owners, after having fraudulently caused each preceding mortgage to be canceled of record to make room for each succeeding one, the rights of the holders of the mortgage paper against the lands in the hands of bona fide purchasers were perfect, except that the several mortgages ranked in the order in which they were created and recorded, as owners subsequent to the fraudulent owner took the property burdened with the mortgages."

The demand of the administrator of the estate of Carmouche to be paid—to the prejudice of Lapleau—the amount of the difference between the amount of Freeland's $2,000 note and the amount of his $4,000 mortgage note appears to have passed out of the case, by the administrator's failure to appeal. There was no merit in the claim, because the mortgage securing Freeland's $4,000 note could not be a mortgage in favor of the estate of Carmouche, the mortgagor, for the excess over the amount of the $2,000 note which the estate owes to Freeland. The estate of Carmouche, being the mortgagor, cannot be also the mortgagee.

We have concluded that the judge was right also in his refusal to condemn Lapleau to pay Freeland damages, even for attorneys' fees, for the dissolving of the temporary restraining order. It is true that this court held, in Albert Pick & Co. v. Stringer, 171 La. 131, 129 So. 731, that damages for attorneys' fees might be allowed against one who wrongfully obtained a temporary re-

straining order—the same as for wrongfully obtaining of a writ of injunction; but it has never been decided that the judge must in all such cases allow damages for attorneys' fees. It was decided by the Court of Appeal for the Second Circuit, in Chavis v. Trimble, 124 So. 703, that damages for attorneys' fees should not be allowed on the dissolution of a temporary restraining order where the facts of the case were unusual, in that there was a very apparent, though not real, justification for obtaining the temporary restraining order. The district judge has made it plain in the present case that, in the peculiar circumstances of the case, he felt constrained to forbid a sale of the property, in either Freeland's or Lapleau's executory proceeding, until all of the parties complaining could have a hearing.

Our conclusion is that the judgment appealed from is correct in every respect.

The judgment is affirmed.