REGAN, Judge.
The plaintiff, Lurry D. Lacour, filed this suit against the defendant, Ford Investment Corporation, endeavoring to foreclose upon a mortgage encompassing certain immovable property sold by the plaintiff to the defendant corporation through the medium of a credit sale which was executed on August 7, 1956.
The defendant made no appearance herein and did nothing to prevent the consummation of the foreclosure action. However, the present owners of part of the land which forms the subject matter of this litigation, James Arnoult, George Elstrott, and Morris Vaccarella, filed a petition of intervention in an endeavor to enjoin the plaintiff from proceeding further with the foreclosure, predicated on the hypothesis that they purchased the property in good faith and in reliance on the public records of the Parish of Jefferson, which indicated that there were no encumbrances existing thereon.
The lower court rendered judgment in favor of the intervenors, and from this judgment, the plaintiff has prosecuted this appeal.
The record reveals that the plaintiff, Lurry D. Lacour, and one George D. Williams sold Square 23 and Square 40 in the Highway Park Subdivision, Kenner, Louisiana, to the defendant corporation on August 7, 1956. The consideration for this sale was $10,000.00 in cash, together with a note in the amount of $40,000.00, secured by a mortgage on the subject property. Each of these squares contained 48 separate lots.
*465 During the month of March, 1957, John D. Nix, III and Thomas Favre, the vice-president and secretary respectively of the defendant corporation, requested Lacour to grant them a partial release of' mortgage on some of the lots, in order that they could effect the sale thereof to third persons. The act of sale and the act of partial release were to be passed in Nix’s office, and Richard K. Simoneaux was requested to act as the notary with respect to the partial release, because Nix, who was himself a notary public, was an officer of the debtor corporation and therefore did not want to act as notary on the partial release.
For some reason, the purchasers did not appear, and in order to avoid the necessity of returning to Nix’s office, Lacour signed the release in triplicate, together with Simoneaux and two witnesses. The act which he signed purported to release Lots 44 through 48 in Square 40 from the mortgaged property.
On May 23, 1958, Ford Investment Corporation sold Lots 1-43 inclusive in Square 40 to the American Cigarette Service. Nix passed the act of sale, and the attached certificates did not reveal the mortgage in favor of the plaintiff for the reason that approximately an hour and one half before the certificates were dated a partial release of mortgage was filed showing that the mortgage had been released to the extent of the lots in question. As will be discussed in more detail hereinafter, the release had been altered by persons unknown to include Lots 1 through 43 of Square 40 in addition to Lots 44 through 48, which were contained in the original unaltered release.
On June 1, 1959, American Cigarette Service sold Lots 1 through 24 of Square 40 to James O. Manning and James Arnoult, the latter being one of the intervenors herein. Manning then sold his one half interest therein on February 12, 1960, to George E. Elstrott and Morris Vaccarella, the other intervenors. Thereafter, on June 15, 1962, a sale and resale were executed between intervenors and Guaranty Savings and Homestead Association, which created a vendor’s lien and privilege on the property in the amount of $15,000.00.
This case poses for our consideration the classic theoretical conflict between the necessity for security of land titles on the one hand and the integrity of the public records doctrine on the other. In effect, the primary argument made by the inter-venors is that they purchased the property on the faith of the contents of the public records of the Parish of Jefferson, which unequivocally revealed that no mortgage existed in favor of the plaintiff on the property purchased by them.
However, the record discloses with equal clarity that the plaintiff signed a partial release on Lots 44 through 48 of Square 40, and that the portion of the document releasing Lots 1 through 43 thereof was inserted into the release at a later time. A cursory examination of the document leaves no doubt as to its alteration. The altered' portion was inserted on another typewriter, and the print thereof is obviously different from that used in the preparation of the original release.
It is our opinion that the rule of stare decisis[1] is fully applicable to the facts hereof since the title to real property *466 forms the subject matter of this litigation, and therefore the rationale emanating from Zimmer v. Fryer[2] fully encompasses this case. The Supreme Court, speaking through Chief Justice O’Niell, settled a similar conflict by virtue of the following reasoning:
“The doctrine that a person in good faith buying real estate, or acquiring a mortgage or lien on it, may rely upon the public records in determining the ownership of the property, and its freedom from mortgages or liens, does not protect one who, in good faith, buys real estate or acquires a mortgage on real estate on which a prior mortgage has been cancelled fraudulently or without the consent of the holder of the mortgage or of the mortgage note or notes. The Civil Code, in articles 3371 and 3372, declares that a mortgage or lien can be cancelled only with the consent of the holder of the mortgage or mortgage note or notes, or by virtue of a judgment rendered against him, ordering the cancellation. In Freeland v. Carmouche, 177 La. 395, 405, 406, 148 So. 658, 661, 662, the court reviewed the decisions on the subj ect, and said:
“ ‘The rule seems arbitrary, but it is now well settled by the decisions of this court, that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record. Dreux, Executor v. Ducournau, 5 Mart., O.S., 625; Lafarge v. Morgan, 11 Mart., O.S., 462, 527; Macarty v. Landreaux, 8 Rob. 130; Hennen v. Sewell, 8 Rob. 216; Delavigne v. Gaiennie, 11 Rob. 171, 173; Mrs. De St. Romes v. Widow Blanc, 20 La.Ann. 424, 96 Am.Dec. 415; Horton v. Cutler, 28 La.Ann. 331; Mechanics’ Building Association v. Ferguson, 29 La.Ann. 548, 550; Morris v. Cain’s Executors, 34 La.Ann. 657, 665; Levy v. Desposito, 133 La. 126, 62 So. 599; Gallagher v. Conner, 138 La. 633, 70 So. 539; Fisher v. Trimble, 161 La. 343, 108 So. 666.’ ”
 On the basis of the dogma enunciated in the foregoing case and in the innumerable cases upon which it is predicated, there exists no doubt that the inter-venors do not possess the right to enjoin the plaintiff from enforcing his mortgage. Contrary to the pronouncement of the court in Freeland v. Carmouche, as quoted by Chief Justice O’Niell above, the rationale on which the rale is predicated is not as arbitrary as it would appear from that case. In contradistinction to popular legal opinion, the law of registry does not create rights, but instead makes them effective against third persons. If an act of release of mortgage constituted ir-rebuttable proof of its own validity irrespective of forgery or material alteration, third persons would be fully protected in acquiring property in sole reliance on the public records. However, if this were so, no title to real property would be safe, since it could be divested from its true owner through a forged or altered document by means of the mere recordation thereof. Consequently, we are convinced that the rule pronounced in the Zimmer case is necessary for the security and protection of titles to immovable property.[3]
The intervenors finally assert that they are entitled to the issuance of an injunction because the plaintiffs should be barred by the doctrine of equitable estoppel from proceeding further with the foreclosure suit. They argue, in effect, that the action of *467 the plaintiff in leaving the release at the office of the defendant corporation and thereby affording those who altered the document the opportunity to effect a fraud is sufficient justification for denying the plaintiff any relief herein. In other words, they insist that when one of two innocent parties must incur a loss caused by the fault or neglect of a third person, that party whose actions made the wrong doing possible should bear the responsibility therefor.
We fully appreciate the philosophy of the foregoing argument; however, this appeal to equitable principles borrowed from the common law is not applicable to the facts hereof. Article 21 of the Civil Code expressly provides that in all civil matters a judge is bound to proceed and decide according to equity only where the positive law is silent.[4] In this case, it is now evident that the positive law, in its wisdom, has decreed that the holder of a mortgage prevails over subsequent purchasers of the mortgaged property, despite their reliance on the face of the public records, when the mortgage has been released by virtue of a fraudulently altered document.
In oral argument before this court, a substantial amount of time was devoted to the question of whether or not the effectiveness of the release as to Lots 44 through 48, which the plaintiff initially consented to, was affected by the alteration of the document. We were somewhat surprised to find that the record disclosed that the intervenors only assert an interest in Lots 1 through 24 and not in the lots originally intended to be released. Therefore, the effect of the alteration of the original release, in so far as Lots 44 through 48 are concerned, is not posed for our consideration.[5]
For the foregoing reasons, the judgment appealed from is reversed, and the case is hereby remanded to the lower court for further proceedings consistent with the rationale hereof.
All costs incurred herein are to be paid by the intervenors.
Reversed and remanded.

. The Civil law has always recognized that certain branches of the law call in conspicuous measures for certainty and order for an administration of justice that is strict and in a sense mechanical, such as inheritance or successions, definition of interests in property and the mortgage or conveyance thereof, some matters of commercial law and transfers of obligations, etc.
Other branches of the law are better served where flexible standards capable of being individualized to meet the needs of varying conditions, supercede the rigid rule of stare decisis with its mechanical application, such as torts, workmen’s compensation, and generally those branches of law that deal immediately with conduct.

. 190 La. 814, 183 So. 166 (1938).

. See 39 Tulane Law Review 491 wlierein William Y. Redmann, Associate Professor of Law, Loyola University, in an excellently prepared article discusses the wisdom for the rule of law applied to the facts hereof.

. It is doubtful that the redactors of the Civil Code contemplated common law equitable principles when they used the word “equity” in Article 21. Equity is therein defined as “natural law and reason, or received usages * * Thus common law equitable principles may or may not in any given case, be included in “equity” as defined in Article 21.

. Compare American Guaranty Company v. Sunset Realty & Planting Company, 208 La. 772, 23 So.2d 409 (1944) with Munn v. Hoyt, 150 La. 729, 91 So. 169 (1922).