PROVOSTY, J.
The sale by which the defendant, White, acquired the property in litigation, was in reality a cash sale, and the entire purchase price was paid cash at the time of the passage of the act of sale. But, in order to create a note secured by mortgage and vendor’s privilege on the said property, to be used by him thereafter as a collateral in obtaining loans, he caused the sale to be made as if on a credit. Accordingly, the act of sale was made to recite that the sale was on a credit; that he, the purchaser, executed his note for the purchase price, secured by mortgage and vendor’s privilege on the property; and that the note was delivered to the vendor.
As a matter of fact, the note was not so delivered, but was kept by the defendant, White, the maker of it, and was by him delivered on the same day to the plaintiff bank in pledge as collateral for a loan equal to its full amount, $6,000. This was in 1905. In 1914 the plaintiff bank sued out executory process in -foreclosure of the mortgage and vendor’s privilege. In its petition it alleged that the said note was secured by mortgage and vendor’s privilege on the property in controversy.
In the meantime, while the said note was thus being held in pledge by the plaintiff bank, the defendant, White, failed in business, and made an amicable assignment of his property to trustees for the benefit of his creditors, including the property in controversy. These creditors have enjoined the ex-ecutory process, on the ground that the debt originally evidenced by said note has been extinguished either by payment or confusion, the note 'having been acquired by the plaintiff bank directly from the maker thereof “a considerable time after the original issue” thereof, and that the mortgage and vendor’s privilege originally securing said note ceased to exist as a consequence of the extinguishment of the note, and could not be revived by a reissuance of the note.
To that petition the plaintiff bank answered, alleging the facts to be hereinabove stated.
[1, 2] When the debt which a mortgage secures ceases to exist, either by payment or confusion, the mortgage also ceases to exist; and, as against third persons, it cannot be revived by the reissuance of the mortgage *57 note, whether before or after maturity. Our jurisprudence is firmly settled on that point; but our jurisprudence is equally settled on the point that a mortgagor may make a mortgage in favor of a nominal, or straw, mortgagee, and himself negotiate the note secured by the mortgage. Schepp v. Smith, 35 La. Ann. 1.
Usually, in such cases, the note is made to the order of the maker, and is by him indorsed in blank, and the mortgage is made in favor of the. nominal mortgagee and of all future holders of the note; and that is precisely what White did in this case. Burke, the vendor, who figured in the act as mortgagee, was only nominally such, since the price of the sale had been paid to him in full, and therefore nothing was due him for which a real mortgage could have been given.
But, for showing these facts, the plaintiff bank has had to resort to parol evidence, and the plaintiffs in injunction have made the objection that parol evidence is inadmissible for contradicting or varying the written act, basing themselves upon the following articles of the Code:
“Art. 2276. Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor in what may have been said before, or at the time of making them, or since.”
“Art. 2236. The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.”
By the expression “against the contracting parties,” the latter article means “between the contracting parties.” This is shown by the text of the Code Napoleon from which said article was taken verbatim, and also by the French text of the Code of 1825, where the word used is “entre,” the English equivalent of which is “between.” The article is not intended to announce a different rule of evidence from that enunciated by article 2276, but merely to provide that an act when in authentic form makes full proof of its contents.
[3] Article 2276, if taken literally, would have operation as well between a party to the act and a stranger as between the parties to the act; but such is not the idea intended to be expressed. Finlay v. Bogan, 20 La. Ann. 443. The intention of the article is simply to enunciate the well-known rule of the law of evidence that parol is not admissible to contradict or vary the terms of the writing which the parties have drawn up to serve as the evidence of their contract.
That rule “is applied only in suits between the parties to the instrument.” Greenleaf, Ev. § 279. And, of course, under familiar principles, the privies to the parties to the act come also within the rule.
In any controversy, therefore, between a party to the act and a stranger, the party to the act is as free to avail himself of parol evidence for contradicting or varying the act as the stranger is. See note, 8 Ann. Gas. 350, where an English decision and decisions of federal courts and of the Supreme Courts of the states of Alabama, Arkansas, California, Illinois, Kentucky, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio,' Texas, and Washington are cited to that effect.
That legal situation is illustrated by the vast number of cases in our reports in which sales and mortgages have been attacked on the ground of fraud and simulation. In such cases the door has been open to parol as widely for defending the acts as for attacking them. And the reason why third persons, or strangers, to the act are allowed to use parol in such cases, is not because of the allegation of fraud, but because of these third parties being strangers to the act, and therefore not bound by its recitals. It is only as between the parties to the act that, an allegation of fraud or error is necessary for opening the door to the introduction of parol.
And not alone in cases of that kind, but in others when the consideration expressed in the act has been shown by parol to be false, *59 the true consideration has been allowed to be shown by the same kind of evidence. D’Meza v. Generes, 22 La. Ann. 285; Brown v. Brown, 30 La. Ann. 966; Jackson v. Miller, 32 La. Ann. 432; Landry v. Landry, 40 La. Ann. 229, 3 South. 728; Linkswiler v. Hoffman, 109 La. 954, 34 South. 34; Phelan v. Wilson, 114 La. 813, 38 South. 570. Indeed, article 1900 of the Code expressly provides for such a case. Thus—
“If the cause expressed in the consideration should be one that does not exist, yet the contract cannot be invalidated, if the party can show the existence of a true and sufficient consideration.”
Show it by parol, of course.
In Robinson v. Britton, 137 La. 863, 69 South. 282, where a different consideration than that mentioned in the act was sought to be shown by parol as between the parties, and Jackson v. Miller, supra, was invoked as authority, this court distinguished that case, saying:
“The ease was therefore one between the parties to an act of sale, on the one hand, and a third person, attacking it for fraud and resulting prejudice to his rights, on the other, and it does not fall within the meaning of the law which makes an authentic act full proof as against the contracting parties litigating inter sese, and has no application to the case now under consideration.”
In Vial v. Moll, 37 La. Ann. 205, this court again made the distinction between the eases where the litigation is between the parties to the act, and those “in which third parties are the movers.”
The question of the admissibility of parol evidence to contradict the written act resolves itself therefore into that of whether the suit is or not between parties privy to the act.
[4, 6] A “privy” is one who has succeeded to some right or obligation which one of the parties to the act derived through the act or incurred under it. The plaintiff bank is a privy, because it is the mortgagee under the act. But the plaintiffs in injunction are not privies. They have succeeded to none of the rights or obligations of either of the parties to the act. They have certainly not succeeded to any of the rights or obligations of the vendor, Burke, and have with equal certainty succeeded to none of the obligations of White. They could be privies, therefore, only if they had succeeded to the rights of White under the act. Now, these rights of White under the act were twofold: First, to compel Burke to deliver the property; and, second, to compel Burke to warrant the title. These are certainly not the rights which the plaintiffs in injunction are seeking to vindicate in this suit. They have sold goods to White on a credit, and White is indebted to them for the price of these goods. They are creditors of White. The plaintiff bank has lent money to White, and is a creditor of White.
“The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference.” C. O. art. 3183.
“Lawful causes of preference are privilege and mortgages.” C. C. 3184.
The plaintiff bank is claiming to have a mortgage, and the plaintiffs in injunction are contesting that pretension. They are doing so in their quality of creditors, because of a right derived from the law and from their contract of sale of goods to' White, and not from any right derived from the contract between Burke and White. The litigation is between creditors of White, and the plaintiffs-in injunction are standing squarely and exclusively upon their rights as creditors. They are not seeking to enforce any obligations due-to their debtor White under his contract with Burke; hence they are not privy to-that contract, but are strangers to it, and the litigation is between a privy to the contract and a stranger.
The writing evidencing a contract cannot be contradicted or varied by parol in any *61 suit to enforce the rights or obligations under it, but it may in any other suit.
The present case is peculiar, in that apparently the plaintiffs in injunction are not seeking to contradict or vary, or, indeed, to attack, the act in any way, but, on the contrary, are objecting to its being varied and are insisting that it be given effect as written. But this is so only in appearance; and the proof of it is that the act will have full operation as between the parties to it or their privies if the plaintiffs in injunction will simply hands off. The real situation is that they are relying upon something outside of the act for robbing it of its effect; for arresting the operation which the parties to it intended that it should have, and which it would have if outsiders would simply hands off. This something outside of the act which the plaintiffs in injunction are relying on for defeating the operation which the parties to the act intended it should have is the fact that the note was negotiated not by Burke, the person figuring as mortgagee in the act, but by the mortgagor, White. This fact is a matter entirely outside of the act, and it is something which ordinarily can be proved only by parol, and which in the present suit these plaintiffs have in fact proved by parol. This parol evidence having been admissible for defeating the act, it would be a strange rule which would not allow the introduction of the same kind of evidence for maintaining the act. As said by Judge Folger, in McMaster v. Ins. Co., 55 N. Y. 222, 14 Am. Rep. 248:
“As, in a contention between a party to an instrument and a stranger to it, the stranger may give testimony by parol differing from the contents of the instrument, so the party to it is not to be at a disadvantage with his opponent, and he, too, in such case, may give the same kind of testimony.”
For the purpose, doubtless, of removing the present case from under the operation of this equitable principle, it was said in the argument that the plaintiffs in injunction stand in no need of parol for establishing the fact that the note was negotiated by the mortgagor and not by the mortgagee, since the answer of the plaintiff bank in the present suit recites that fact. That is true, but we think that, if this answer is to be taken as evidence, it should be taken as such as a whole, and that as a whole it shows that the note in question has never represented an actual debt, but was at first merely lifeless paper, and thereafter was only a collateral. We deem it unnecessary to enter here into the nice question of when the pleadings of a party may or may not be divided for serving as admissions of fact.
Besides, if it were true that the plaintiffs in injunction were in a position to have dispensed with parol evidence, in view of the admission of the answer, if they had chosen to do so, we do not think that that circumstance could make any difference in the case; for what opens the door to parol evidence in eases like the present, where the suit is between a party to the act and a stranger, is not the fact of the stranger’s having actually availed himself of that kind of evidence, but it is the fact that it was his privilege to do so.
It was also said in the argument that to allow this parol evidence to be received would be to allow a mortgage to be proved by parol. But this is not so at all. The only thing that is proved by the parol is that the mortgagee named in the act was merely nominally such. The evidences of the mortgage are all in writing, to wit, the note, the act of mortgage, and the registry on the public records.
If, after the fact that the maker or mortgagor himself negotiated the mortgage note has been proved or admitted parol evidence were not admissible to establish that the mortgagee figuring in the act had been only nominally such, and that the note had not represented an actual debt until negotiated, every mortgage so executed in favor of a nominal mortgagee could be defeated by such proof of negotiation by the maker; and the jurisprudence now so firmly established of *63 mortgages so executed being valid would be wiped out at one swoop.
[5] On the first hearing of this case, it appeared to two of the members of the court that, inasmuch as the plaintiff bank was suing on the note as being secured by vendor’s privilege, it could not be allowed to contend that the obligation had not originally had for its consideration the purchase price of the property. In so viewing the matter, the important fact was lost sight of, that, as against the defendant, White, who in negotiating the note had represented it to be a vendor’s note, the allegation of the note having this character was perfectly legitimate; and that it was only as against him that the note was thus being sued on. An allegation thus made in another suit and as against another party (and especially one thus legitimate when and where made) cannot operate as a judicial estoppel. Farley v. Frost-Johnson Lumber Co., 133 La. 504, 63 South. 122, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717; Coleman v. Jones & Pickett, 131 La. 803, 60 South. 243; Davis v. Welch, 128 La. 785, 55 South, 372.
The judgment dissolving the injunction is affirmed, with costs.
MONROE, C. J., recused.