No. 3853

Second Circuit

(Second Division)

WYCHE v. CHADICK

(November 18, 1931. Opinion and Decree.)

Reynolds, Hamiter & Hendrick, of Shreveport, attorneys for plaintiff, appellant.

Dickson & Denny, of Shreveport, attorneys for defendant, appellee.

CULPEPPER, J. Plaintiff sues to recover of defendant $1,000 which plaintiff put into the business of Chadick-Hayes Company, Inc., at the alleged request and solicitation of defendant and upon the full faith and credit of, and assurance by, defendant that defendant would be personally responsible for said money and would repay same to plaintiff at any time plaintiff demanded it of him. Subsequently the company failed, went into bankruptcy, and plaintiff, having thus lost his $1,000, demanded reimbursement from defendant. Defendant entered general denial of liability and specially denied having ever promised to pay plaintiff the money under any condition or circumstance. The case was tried, resulting in a judgment rejecting plaintiff's demands, and he has appealed.

The view taken of the case by the learned trial judge, as disclosed by his written opinion filed in the record, was that the case comes within the provisions of the Statute of Frauds; that if under the proof

defendant is shown to have promised or agreed to pay plaintiff the sum of money sought to be recovered, it was nothing more than a verbal promise to pay the debt of a third person, for the recovery of which parol evidence cannot be received as proof.

According to our view of this case, it is not one coming under the provisions of the statute referred to. From the facts and circumstances disclosed by the evidence, no debt was incurred by the Chadick-Hayes Company, Inc., when plaintiff joined it and put his $1,000 into it. It was not a loan or an advance made by plaintiff to the company. It was a taking of stock in it. He was to draw down a dividend from the earnings of the company, and not interest upon the $1,000 he put in. He was not to be paid back the $1,000 after a period of time. This money became merged into and became a part of the capital stock of the company. If the company failed, plaintiff would also fail in the venture and lose the money invested.

Plaintiff in his petition alleges that defendant requested him to join said company and "make said deposit." In another paragraph he recites, "That defendant on other occasions has obtained similar deposits and sold shares of stock of said company, on the strength of his personal financial rating and on his promises to be personally responsible for any loss on such deposits and shares of stock." Notwithstanding plaintiff refers to the money he put into the company as a "deposit," he nevertheless represents himself as joining the company and the money as going for shares of stock. Defendant in answer makes no defense that the case comes un-

der the Statute of Frauds. While he does not state that the money put up by plaintiff went for stock in the company, his averments virtually amount to that. He recites that he "did inform said plaintiff that under the conduct of the said business he (plaintiff) must place One Thousand Dollars with said company"; that such was the rule of the company, and that plaintiff was to be paid "one 10% dividend" as provided in the contract which plaintiff signed. He avers that the contract is attached to and made part of the answer, but we find it not attached to answer, nor do we find it anywhere in the record.

Upon the trial, defendant urged no objections to the testimony offered on the ground that it was an effort to prove a promise to pay the debt of a third party. Defendant's contention, and he so testified, was that he made no such agreement or promise. The court in its written opinion did not pass on whether or not the testimony offered by plaintiff preponderated over that of defendant on this point, but decided the case from a different standpoint, as we have already stated.

Plaintiff testified that Chadick-Hayes Company, Inc., was organizing a chain of Phoenix stores during the summer of 1927 and defendant wanted plaintiff "to go in on it." Says he and G. A. Kelly, who was also interested in securing a similar position, called at defendant's office on Sunday, August 7th, to discuss the matter. Mr. A. Kelly, father of G. A. Kelly, went along with them. Defendant, F. R. Chadick, and Mr. D. H. Hayes were in the office at the time. F. R. Chadick was the president and manager of Chadick-Hayes Company, Inc., and D. H. Hayes, in his tes-

timony, says his duties as an officer in the company were "to arrange with all of them (referring to such persons as plaintiff) to make the investment and take over the management of the various stores opened."

Plaintiff testified that he had previously discussed the matter with Mr. Hayes and, in contemplation of accepting a position, he had spent one week at one of the stores in Plain Dealing; that upon his return Mr. Chadick called him over telephone on the morning of the 7th and asked him to come to the office; that it was in response to this call that he and the two Kellys called at defendant's office that morning to discuss the matter; that Chadick and Hayes wanted him and Kelly to put up the $1,000 each and he and Kelly told them they were "a little scared" to put it up because they had looked up Chadick-Hayes Company, Inc., and found that the company "owed a lot of money." On the following Wednesday plaintiff says he went to defendant's office alone again and defendant was also alone in his office; that on that occasion defendant again wanted him to put up the money. "He told me if I was scared of Chadick-Hayes Co., their rating, to look up him, F. R. Chadick, he would be personally responsible for that money." Plaintiff says he told Mr. Chadick he and Kelly had looked up the company and had found the company "owed lots of money." Says he then went back to Plain Dealing and got Mr. Doles, the banker there, to look up Chadick's rating and found it to be good; that then on the following Sunday, August 15th, he and the two Kellys again called at Chadick's office; that they told Mr. Chadick "that the stores was supposed to be broke" and Chadick replied: "Don't you worry, I will be personally responsible for your money." Asked on what representation did he make the deposit, the plaintiff replied:

"That any time that I made my demand for my money he would be personally responsible for it and give it to me."

Asked:

"What prompted you to make this deposit with Chadick-Hayes Company, Incorporated, through Mr. Chadick?"

Plaintiff answered:

"Well after Mr. Chadick told me he was going to be personally responsible for it and after we looked him up, I felt like it was safe and I was going to work for him."

Plaintiff at that time signed a contract and gave Mr. Chadick a check for $500 payable to Chadick-Hayes Company, Inc., and executed his note for $500 payable to the company. On cross-examination plaintiff said he had talked to Mr. Lassiter, also to Mr. Hayes, before he had to Mr. Chadick; that Lassiter had explained it to him a little; and that "in a general way" Mr. Hayes had shown him one of the contracts.

Mr. G. A. Kelly, one of plaintiff's friends with him on August 7th at the conference, testified as to the conversation. He says that after the matter had been discussed his father, Mr. A. Kelly, who was present, remarked to Mr. Chadick, "What if these stores go broke, what about the boys' money?" And that Mr. Chadick told us "that he would be personally responsible and he would lose his last dollar before he would let us lose a dime." This witness was also present at the conference on the following Sunday, August 15th. Asked what took place on that occasion, he said:

"We came down and went over the de-

tails of the stores again and asked him * * * I don't remember if we asked him the question over again about in case the store went broke but he repeated it, that he would be personally responsible.

"Q. Responsible for what?

"A. For our money in case Chadick-Hayes Company went broke."

This witness states that these company officials had been urging him and plaintiff on several occasions previously to put up this money. He signed up a contract and put up $1,000 the same time plaintiff did. He says he got his money back. He was prevented from explaining how he got it on account of objections from counsel for defendant. Mr. A. Kelly, father of G. A. Kelly, testified substantially the same as plaintiff and G. A. Kelly did. Asked what was said at the conversation on August 7th about contemplated deposit, Mr. Kelly said:

"Well they was figuring on getting the store. They would have to put up One Thousand Dollars before they could get in on that store."

Then witness says:

"And we talked a while about it and Mr. Chadick and Mr. Hayes laid out the plans and told about what they were going to do and I remarked, I says, 'You fellows look like you need money,' they says, 'We do. There aint a concern hardly but what dont need money.'

"Q. Who said that?

"A. Mr. Chadick, and I asked him then, I says, 'well now, Mr. Chadick, if these boys put up this money here and this thing goes busted.' I says, 'What about their money? Where is it to come from?' He says, 'I will be personally responsible for it.'"

This witness in relating the conversation on the following Sunday, August 15th, says

the question came up again, although he does not recall who brought it up, and that Mr. Chadick repeated the same thing. Asked just the exact words Mr. Chadick used, Kelly said:

"He says, 'I will be personally responsible for it.'"

The defendant, on the stand, testified that Mr. Lassiter had brought plaintiff to see him two or three weeks before the occasion of the conversation on August 7th; that on that occasion plaintiff wanted to open up a store and he (Chadick) put him to work putting in other stores; that he (Chadick) explained to plaintiff that it would be necessary for him to make a deposit of $1,000 in order to open a store, and that a contract would be issued for the $1,000; that on the occasion of the conversation on August 7th, "when they got through" discussing the matter, the question came up "in case the concern went broke where would they be as regards their deposit," and he says:

"I explained to them that the present incorporators, principally Mr. Hayes, W. R. Chadick and myself, all our interest was in common stock, that I would lose, we would lose all of, our last dollar before they would lose anything."

Asked if whether on that occasion he said he would be personally responsible, he replied, "I did not." Says he never at any time made any such statement. Says that if he made any statement on the 15th of August regarding the matter that he made the same statement then that he had made on the 7th. Asked again what he did state, he answered:

"Made the statement not only to this gentleman, but every other one that came in and was solicited to come in to the

Chadick-Hayes Company, that my holdings in the company was common stock and their deposit, or their stock being preferred stock was protected by my common stock and in case the concern should go broke, or get in financial difficulty I would lose my last dollar before they would lose anything, that statement was made over, and over, and over again."

Defendant testified the common stock of the company amounted to about $65,000, of which he and his brother, W. R. Chadick, owned about $35,000, and that he individually owned a little over half of that. Admits he was the largest stockholder in the company and that he was its president, director, and managing officer. He states the $1,000 paid in by plaintiff went into the business of the corporation and was used in its regular course of business. On cross-examination defendant did not appear to remember much about the conversation, nor who was present, nor how many conversations he had with plaintiff. Asked if he had two, he said he did not know; asked if he had five, he said, "I may have had forty." Asked if Mr. Kelly was present, he did not know. About all he did appear to be certain of was that he knew he did not tell plaintiff what plaintiff and the two Kellys testified he told them. He does not recall phoning plaintiff to come to his office; does not recall telling plaintiff it would be necessary to put up the money. Asked to state just what he told plaintiff, he said:

"I told each and every one the same thing I told Mr. Wyche, which he well knows, that in case the company should go broke the business venture prove a failure that my interest was all in common stock and my common stock protected the depositors, also the preferred stock, that I would have to lose all I had in the business before they would lose a dollar.

"Q. Why did you tell everyone that?

"A. Simple reason I wanted them—my reason for remembering it so distinctly I have said it a thousand times.

"Q. You told them that without them asking?

"A. Yes sir, I would tell them even if they didn't ask.

"Q. You remember telling everyone that particular statement?

"A. Yes sir."

H. F. Lassiter testified he was present for only a short while on August 7th and heard part of the conversation, although he did not engage in it. He says he did not hear the statements attributed to defendant by plaintiff's witnesses; that he did not hear anything that sounded like it. Says he did not hear them discussing about the preferred stock. This witness states that such statements could have been made and he not hear it, as he came in while the conversation was on, stayed only a short time and left before it ended; and was not listening in on it during all the time he was present.

D. H. Hayes, testifying for defendant regarding the conversation had on August 7th in which he was present and took part, gave practically the same version of it that defendant gave. Asked on cross-examination if he was present when the conversation was held on the following Sunday, August 15th, this witness said he did not remember whether he was present or not. Asked at how many conversations he was present, he said he did not know. Said he was present at several, did not know how many; does not recall but the one on the 7th that the Kellys were present.

Plaintiff testified that no one was present when he had one of his conversations with defendant on Wednesday during the week between the 7th and the 15th, and that on the 15th the only persons in

the conversation were Mr. Chadick, the two Kellys, and himself.

G. A. Kelly testified to the same thing. He says there might have been others in the building, but these four named were the only ones right in Mr. Chadick's office where the conversation took place. Mr. A. Kelly also says he, plaintiff, G. A. Kelly, and Mr. Chadick were the only ones present on the 15th.

Plaintiff and the two Kellys were all positive in their testimony as to the substance of these conversations. They quoted the statements attributed to Mr. Chadick. Mr. Chadick's testimony is not so positive, except that he says he knows he did not make the statements, and explains what he did state. The preponderance of the testimony shows that no one other than Chadick, Wyche, and the two Kellys were present at the conference on August 15th, also that no one else was present and heard the conversation between plaintiff and defendant on Wednesday of the week of the 7th to the 15th of August.

We think the preponderance of the testimony shows plaintiff's version of these conversations to be correct.

Defendant is bound to have known, when he made these statements, that Chadick-Hayes Company, Inc., in the event of a failure, such as did happen to it, would be under no obligation to refund plaintiff's money, therefore there would be no debt which the company could owe plaintiff. It is likewise true that the company owed plaintiff no obligation to pay him back the money even from the moment it was paid in, except possibly through a liquidation of its affairs. It resolves itself down to this, that defendant's proposition to plaintiff was that if plaintiff would put his money into this business venture along with defendant, who already had a large sum of money tied up in it, and needed more, and the venture proved a failure, defendant would personally pay plaintiff $1,000 so as to save him from loss, which would virtually be buying back plaintiff's stock.

Our view is that this case is one of general indemnity, wherein defendant bound himself to indemnify plaintiff in the event of a loss of the $1,000 invested in the business of the company. This money was not loaned by plaintiff to Chadick-Hayes Company, Inc., but it was an investment in the company whereby plaintiff became the owner of stock in it and entitled to a dividend from it. Plaintiff was not to be paid back the money, nor receive interest on it, as in case of a loan. Investment in stock or the acquiring of an interest in a corporation, such as plaintiff invested and acquired in Chadick-Hayes Company, Inc., is not a loan to the corporation; nor was it the extension of credit to it in any manner whereby said corporation became indebted to plaintiff. The plain provision of article 2278 of the Civil Code is that parol evidence shall not be received "To prove any promise to pay the debt of a third person." Since Chadick-Hayes Company, Inc., was not to become and did not become indebted to plaintiff in this transaction, this case does not fall within the provisions of the statute and is not governed by it.

The contract or agreement which defendant entered into with plaintiff was prior to, independent of, and formed no part of, the act of plaintiff in investing his $1,000 in Chadick-Hayes Company, Inc. It was an original prior agreement in which defendant obligated himself personally to indemnify plaintiff in event the investment by plaintiff of his money should prove a failure. Bain v. Arthur, 129 La.

Ann. 143, 55 So. 743; Elliot on Contracts, 1913-1923, sec. 1229.

Plaintiff made the investment relying wholly upon defendant's financial ability and contract of indemnity. The evidence is clear, we think, that defendant was anxious and eager to get plaintiff to put up the $1,000, more so apparently than to have plaintiff to work in a store. Plaintiff was sent to the Plain Dealing store where he worked for only a week when upon his return defendant called him up, had him come to his office, and was asked why he had not put up the money. When plaintiff paid in the money, defendant, instead of giving him the management of a store as he was supposed to do under the contract of employment, sent plaintiff out to drum up others to join in the business, and thereby secure other and additional like sums to go into the treasury of the corporation of which defendant was president, director, and general manager. While the evidence does not disclose the exact number of these stores that were organized, it strongly indicates that there were many of them. Defendant when asked about his statement to plaintiff, said he had made this same statement not only to plaintiff but to every other one who came in and was solicited to come in to Chadick-Hayes Company. In one place he says he made this statement "over and over, and over again." In one place he says he had said it "a thousand times." Defendant testifies that the principal work he put plaintiff to doing was "installing stores." For every store installed there was to be a manager who had to pay into the hands of defendant ostensibly for the company the sum of a thousand dollars. This procedure was kept up right along after the company's financial condition had become bad, of which fact defendant was undoubtedly aware. Notwithstanding the heavily involved condition of the company at the time plaintiff joined it, defendant continued to have new stores installed. This fact in itself indicates that defendant was endeavoring to stem the tide of the failing condition of his company or to speculate on innocent people like plaintiff, or both. Knowing his own heavy investment in the company was in jeopardy, he was seeking additional funds to save loss to himself.

Under these circumstances we think defendant had a direct pecuniary interest to conserve in entering into this contract with plaintiff, such as to amount to a valid and sufficient consideration. Hoggatt v. Thomas, 35 La. Ann. 298; Wahl v. Cunningham, 320 Mo. 57, 6 S. W. (2d) 576, 67 A. L. R. 489; 25 R. C. L. 524, par. 109; Davis v. Patrick, 141 U. S. 479, 12 S. Ct. 58, 35 L. Ed. 826.

It is from the surrounding circumstances in such cases as this, and the relations of the parties concerned, that the courts are governed largely. Elliott on Contracts, secs. 124, 1241, Supplement of 1914-1923.

There is no proof that plaintiff paid but $432 on the $500 note he executed, therefore he would only be entitled to recover this amount plus the $500 paid cash at time of the purchase of the stock.

Since the filing of this appeal the defendant has died and, by motion in this court, W. R. Chadick, the administrator of the estate of the decedent, has been substituted as defendant herein.

Therefore, for the reasons assigned, the judgment appealed from is reversed, and there is now judgment in favor of plaintiff, T. L. Wyche, and against W. R. Chadick, administrator of the succession of F. L. Chadick, deceased, in the sum of $932, together with legal interest from judicial demand until paid and all costs.