CULPEPPER, Judge.
Plaintiffs sue to enforce alleged oral contracts whereby the defendants, mineral lease brokers, induced plaintiffs to lease to defendant’s principal for $5 an acre by promising that if more was paid to any other lessor in the “block”, defendants would come back and personally pay plaintiffs the difference. The district judge held parol evidence inadmissible to prove the alleged oral contracts. From a judgment dismissing their suit, plaintiffs appeal.
We have concluded that parol evidence was admissible to prove the oral agreement *911 sued on. But, we find the evidence does not prove the oral agreements by a preponderance.
The general facts show that Humble Oil Company requested Mr. Fritz Muller, of Crowley, Louisiana, to secure, for assignment to it, a certain block of mineral leases containing about 4,000 acres. Muller then contacted the defendants, Moise L. Fontenot and his son, Nat L. Fontenot, who have been lease brokers in the area for about 20 years and had previously leased thousands of acres from Mr. Muller. Defendants were authorized to take the leases in Muller’s name and agree to pay a consideration of $5 per acre and an annual delay rental of $5 per acre.
Defendants then went out into the territory to secure the leases. They were accompanied by Mr. Joe V. Handley, Jr., an employee of Muller, who apparently went along to sign the checks and by Mr. Maurice Lafleur, a local resident, whom they employed to locate the homes of the landowners.
Plaintiffs contend that to induce their signatures to leases for $5 per acre, the defendant, Moise Fontenot (and by acquiescence, his son, Nat Fontenot) promised that if a greater amount was paid to others in the same block, defendants would come back and personally pay plaintiffs the difference. The facts show that subsequently about 80% of the acreage was leased for $5 an acre but finally the remaining holdouts were paid $10.
On learning that a few subsequent lessors were paid more than $5 per acre, the plaintiffs filed this suit for money judgment against the defendants, Moise Fontenot and Nat Fontenot. Plaintiffs do not seek to annul the leases or change them in any way. Mr. Muller, the lessee, was not named a defendant by plaintiffs. (Defendants filed a third party demand against Muller, but no issue in this regard is present on appeal.)
We will first consider the admissibility of parol to prove the oral agreement sued on. In holding such testimonial proof inadmissible the district judge relied primarily on Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963). In that case plaintiffs and defendant entered into an oral joint adventure under which each advanced $20,000 for speculation in mineral interests. Defendant purchased a lease in his name alone. Several years later defendant sold this lease for $900,000. Plaintiffs then filed suit for an accounting of profits realized from the oral joint adventure, seeking their share of the profits realized from the sale of the lease. On rehearing, our Supreme Court held that parol evidence was not admissible to prove the oral joint adventure. The court reasoned that the prohibition against testimonial proof of the transfer of immovables (LSA-C.C. Art. 2275) applies not only to cases where the title to realty is directly affected, “ * * * but also in others where the litigants merely sought to derive benefits growing out of verbal agreements relating to the sales of immovable property.”
In support of its decision in Hayes v. Muller, supra, our Supreme Court relied principally on Prescott et al. v. Prescott et al., 170 La. 233, 127 So. 611 (1930). The court discussed the Prescott case as follows:
“Therein, the plaintiffs attempted to show by parol that one of the defendant (a brother) had acquired certain property in his own name, but that in doing so he was acting as the agent of the mother and used money which had been entrusted to him to invest for her. Prior to his mother’s death such defendant had sold the property and retained all of the funds derived from the sale. By their action plaintiffs (as heirs of their mother) sought to obtain an accounting of the revenues of such property received by that defendant while it was still in his name and to obtain their share of the sale price which had been paid to him. The court *912 (in sustaining an exception of no cause of action) held that since plaintiffs were debarred by the parol evidence rule from showing title in their mother (rather than in the defendant) they could not be heard to demand an accounting of either the revenues of the property or any part of the proceeds derived from the sale' thereof
We think both the Hayes and Prescott cases are readily distinguishable from the present matter. There plaintiffs were seeking by parol to prove oral agreements entitling them to share in the proceeds of sales of immovables. In the case at bar, plaintiffs are not seeking any part of the proceeds from the sale of the leases, or any other, benefits allegedly accruing to the plaintiffs through or by virtue of the lease contracts themselves. • They do -not seek to- annul or alter the leases, or to affect the title in any way whatsoever, or to claim any benefits .flowing from the title.
Defendants -also argue the applicability of-LfeA-GC. Art.' 227-6 which provides: “Neither shall parol evidence be admitted agajtist or beyond what is. contained in the acts, nor on what may have been said ber for.e, or at tlie time .of making them, or since.” The leases contained the following provision: “The consideration paid by lessee to lessor is accepted as full and ade.-quate consideration for all rights, options and privileges herein granted.”
Defendants argue that if parol evidence of the alleged oral agreement is allowed, it will vary the terms of the written lease, by showing an additional sum is due lessors. One answer to this argument is our settled jurisprudence that the rule excluding parol evidence, to vary or contradict a written instrument, applies only to litigation between the parties to the instrument and their privies. W. K. Henderson Iron Works & Supply Co. v. Jeffries, 159 La. 620, 105 So. 792; Commercial Germania Trust & Savings Bank v. White, 145 La. 54, 81 So. 753; Resweber v. Jacob, La. App., 125 So.2d 241; Baker v. Baker, La. App., 21 So.2d 514; Wampler v. Wampler, 239 La. 315, 118 So.2d 423. A “privy” has-been defined as “ * * * one who has succeeded to some right or obligation which one of the parties to the act derived through the act or incurred under it.” Commercial Germania Trust & Savings Bank v. White, supra.
In the present case neither of the defendants is a party to the written lease. It is equally as apparent that defendants are not privy to the written lease. They have not succeeded to any right or obligation thereunder, nor do they have any interest therein. Hence neither plaintiffs nor defendants are bound by said parol evidence rule in this litigation.
We think able counsel for the plaintiffs has correctly analyzed the present case as being one -where a disclosed agent is alleged to have exceeded his authority and thereby personally bound himself, a legal proposition so clear as to require no citation of authority beyond the codal articles. See LSA-C.C. Art. 3010; Art. 3012; Art. 3013. Plaintiffs testified they knew defendants were acting as agents and understood the oral agreement in question was binding on defendants personally and not on the lessee, Muller, whom they did not know. Plaintiffs said they had known defendants for years and trusted them to personally fulfill the oral agreement.
A somewhat similar situation was presented in Wyche v. Chadick, 18 La.App. 557, 137 So. 554 (2nd Cir.1931). The president of a corporation induced plaintiff to invest money in the corporation on the promise that he would save plaintiff harmless from loss. The court held parol evidence admissible because the agreement sued on was not part of the written investment agreement, but instead was the separate personal obligation of the corporation president.
However, even though we think parol evidence was admissible, a thorough review of the record convinces us that plain *913 tiffs have failed in their burden of proving the oral agreements sued on. The testimony as to the conversations which took place when the leases were signed is highly conflicting. Unfortunately, the trial judge made no finding of fact on this issue.
We will briefly discuss some of the testimony and the circumstánces under which the leases were signed. The defendants, Moise Fontenot and Nat Fontenot, along with Maurice Lafleur, their guide, and Joe V. Handley, Jr., Mr. Muller’s employee, went to the home of Jeffrey Fontenot to obtain his lease and that of his father, Evabe Fontenot. Evabe, Jeffrey and Maurice all testified generally to the effect that they didn’t want to lease for $5 an acre but were induced to do so by the promise of Moise that he would personally come back and pay them the difference if a greater amount was paid to anyone else in the block. Moise and Nat, on the other hand, testified that Evabe and Jeffrey were very anxious to lease for any sum they .could obtain, and, in fact, had prevoiusly agreed to lease for a lesser amount. Both Moise and Nat testified they remembered the entire conversation and that no promise was made to pay any additional amount. Mr. Joe Handley, Jr. said the conversation was mostly in French, which he could not understand.
Defendants, with Maurice Lafleur and Mr. Joe Handley, Jr. also went to the home of the plaintiff, Roy C. Fontenot. Also present there was Mrs. Jeannette Fuselier, who was very anxious to lease her husband’s land, but was advised by defendants it was outside the block. Mr. Handley agreed to try to get authority to lease her husband’s land and advise her later. Roy, his wife, Maurice and Jeannette all testified that Moise Fontenot agreed to pay the additional amount. Moise and Nat again denied any such promise. Mr. Handley said the conversation was again in French.
Either the same night, or the next night, Mr. Handley, along with Nat Fontenot, and a Mr. Faulk, went tó Jeannette’s house and advised her he had authority to lease her husband’s land. Jeannette admitted, in her testimony, that nothing was said at her house about paying any additional amount. She just assumed that the promise she heard at Jeffrey’s house applied to her also. Her husband, John Fuselier, who signed the lease at the time, did not even testify. Mr. Faulk testified he did most of the talking and he simply asked John whether he would lease for $5 an acre. John agreed, they typed the lease, had it signed and gave John a check. Nat Fon-tenot and Handley corroborated Faulk.
The last lease in question is by Roy C. Fontenot and his .mother and’two sisters covering land referred to as “mother’s property.” Roy signed at his house at the same time he leased his own individual property and received a check for his share of the lease at $5 an acre. Roy testified he understood that Moise Fontenot’s promise to pay an additional amount applied also to his “mother’s property”-. Roy’s mother and his two sisters signed the lease later at different times and places and there is no testimony whatever as to any promise having been made by either of defendants to them for an additional amount. These plaintiffs simply argue that since Roy is the oldest child and he signed the lease first, any promise made to him also applied to the others. But, there is no testimony whatever that Roy told his mother and sisters about any promise to pay any additional amount, before they signed.
Under the above brief resume of the testimony, it is apparent, that plaintiffs have not proved any promise by defendants to pay Jeannette Fuselier or her husband, John Fuselier, or the lessors of “mother’s property”, any amount above the $5 per acre stated in the leases. The issue is closer as to the claims by Evabe Fontenot, Jeffrey Fontenot, and Roy C. Fontenot, but we think here also the proof falls short. In addition to the fact that the testimony is conflicting and fairly even *914 ly balanced, there is the fact that defendants were only authorized to pay $5 an acre and it would be most unusual for these experienced lease brokers to go beyond their authority and personally obligate themselves to pay an additional amount. Also, Mr. Muller testified that over 80% of the acreage in this 4,000 acre block was leased for $5 an acre and there is no testimony of any similar promise having been made to any other landowner, except Mr. Maurice Lafleur, who did not choose to file suit. We also base our conclusion in part on an impression of the reasonableness and credibility of the testimony, received from reading the record as a whole.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.