194 So.2d 194 (1967)
NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff-Appellant,
v.
Demma S. WALLACE et al., Defendants-Appellants-Appellees.
No. 10727.
Court of Appeal of Louisiana, Second Circuit.
January 4, 1967.
Rehearing Denied February 9, 1967.
Writ Refused March 29, 1967.
*196 Tucker, Martin, Holder, Jeter & Jackson, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for Thomas A. Snelling, defendant-appellant.
Peters, Ward & Johnson, Shreveport, for Erwin A. Huss, defendant-third-party plaintiff-appellant.
Samuel V. Prunty, Jr., Shreveport, curator ad hoc for Mrs. Demma S. Wallace, defendant-appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
Involved on this appeal is the right vel non of plaintiff, as pledgee of a promissory note secured by a mortgage, to the recognition and enforcement of its pledge and mortgage, despite the cancellation and erasure of the mortgage pursuant to an order of court in a proceeding by rule against the clerk of court and ex officio recorder provoked by Mrs. Demma S. Wallace, one of the mortgagors and a defendant herein, plaintiff having had no notice or knowledge of the proceedings and not having acquiesced therein or consented thereto.
A resume of the facts material to the case is deemed necessary for an appreciation of the issues as they are resolved.
The Capitol Sash & Door Company, Inc., engaged in the manufacture, and in the wholesale and retail sale, of millwork and building materials, was financed, at least partially, through loans and advances by plaintiff, National Acceptance Company of America. An agreement for such financing was executed February 26, 1962. By an instrument of the same date, Chalmers C. Wallace, an officer of the Capitol Sash & Door Company, Inc., and his wife, Demma S. Wallace, unconditionally guaranteed the payment of the obligations, as then existing or as might be thereafter incurred, by Capitol Sash & Door Company, Inc., in favor of plaintiff. To secure the performance of this guarantee, Wallace and *197 his wife pledged to plaintiff a promissory note for $25,000.00, dated February 17, 1961, and the mortgage with which it was paraphed and identified, the mortgage covering Lot 131 of the Brookwood Subdivision, Unit No. 3, Caddo Parish, Louisiana. On the basis of this guarantee, plaintiff made advances and loans to the Capitol Sash & Door Company, Inc. It appears appropriate to point out that this mortgage was, as the instrument itself recites, intended to be used as collateral security. The mortgage specifically provides that the mortgagor may issue and reissue the note from time to time without extinguishing or impairing the obligation of the note or of the mortgage.
Chalmers C. Wallace died November 25, 1962, as the result of an airplane crash. Mrs. Demma S. Wallace, as universal legatee under her husband's last will and testament, unconditionally accepted his succession and, following renunciations by next of kin, was placed in possession of his estate December 21, 1962. Thereafter, Mrs. Wallace resolved to sell the mortgaged property and engaged the services of a realtor who procured a prospective purchaser in the person of Erwin A. Huss.
Huss retained an attorney to examine title to the property. In the course of the examination, two mortgages were found encumbering the property: first, a mortgage to Pan American Life Insurance Company, and, second, the mortgage involved here. Huss intended to assume payment of the first mortgage, but required that the second be canceled. Mrs. Wallace, for that purpose, thereupon petitioned the court and prayed for a writ of mandamus directed to the clerk of court and ex officio recorder. The basis of her demand for the cancellation was the allegation in her petition, to the correctness of which she swore, that the note had been paid and satisfied in full, but was lost. Attached to the petition was an additional affidavit by Thomas A. Snelling, the nominal payee of the note, which also recited that the note had been paid and satisfied in full, but was lost. Snelling further swore that he had not sold, transferred, or otherwise delivered possession of the note to anyone. Noted, also, was Snelling's consent to the cancellation of the mortgage. On a basis of this petition and affidavit, and on the acceptance of service by the clerk of court, who consented to an immediate judgment, the court directed the cancellation of the mortgage. These proceedings were filed June 5, 1963, and were completed on that date, as was the sale from Mrs. Wallace to Huss.
Plaintiff named as defendants Mrs. Demma S. Wallace and Erwin A. Huss, seeking judgment against the former in the full sum of $53,345.43, with interest and attorneys' fees, and judgment against both recognizing its lien, privilege, and mortgage by virtue of its pledge. Also made defendants were Thomas A. Snelling and the clerk of court and ex officio recorder, as well as the latter's insurer, against whom plaintiff prayed for judgment, in the alternative, for whatever loss and damage resulted to plaintiff from the wrongful cancellation of its mortgage. However, a voluntary nonsuit was later entered as to the clerk of court and his surety.
Defendant Huss, in defending against plaintiff's demands for recognition and enforcement of its mortgage, relied primarily upon the public records evidencing the fact that the mortgage had been canceled, and, in the alternative, sought recognition of his claim by virtue of the payments made on the first-ranking mortgage, the rights to which he was allegedly subrogated. In a further alternative, defendant Huss sought judgment against Mrs. Wallace and Snelling in damages for such sums as might be assessed against him. Huss' rights against the clerk of court and his surety were reserved.
In answer to plaintiff's demands, as well as to those of Huss, Snelling alleged he never had possession of the note and urged his good faith in executing the affidavit upon which the cancellation was at least partially based. Additionally, it was contended *198 the note and mortgage were executed as a sham to protect Mrs. Wallace in her possession of her home in case anything happened to her husband.
Mrs. Wallace could not be located for service of either plaintiff's demands or those of Huss, a third-party plaintiff. She is, however, represented by a curator ad hoc appointed by the court. Evidence produced during trial disclosed that Mrs. Wallace had moved to Oklahoma. No affirmative defenses are urged on her behalf.
After trial, the court concluded that the note and mortgage were, to plaintiff's knowledge, initially executed as a sham and, for that reason, plaintiff was not a holder of the note in good faith or in due course. Plaintiff's demands for recognition and enforcement of its mortgage were accordingly rejected. Plaintiff, however, was awarded damages against Snelling in the sum of $25,000.00. From the judgment thus rendered and signed, plaintiff appealed, both suspensively and devolutively; Snelling and Huss, only devolutively.
The basis of the court's conclusion that plaintiff was not a holder of the note in good faith but acquired it with notice of an infirmity was the testimony of defendant Snelling who, at the time of the execution of the note and mortgage, was requested by Wallace, his employer, to serve as a nominal payee of the note. Snelling testified that, upon arrival at Wallace's office, Wallace stated to him that the purpose of the mortgage was to protect Mrs. Wallace in the event anything happened to him. This statement, Snelling testified, was made in the presence of several parties including a representative of plaintiff, whose name, however, he could never recall. No other witness testified with reference to this purported statement. The attorney who acted as notary testified that, according to his recollection, a representative of plaintiff was present, but he did not corroborate Snelling's testimony with reference to Wallace's statement.
From other facts appearing in the record, Snelling's testimony is not only unconvincing but, in some respects, incredible. An officer of plaintiff corporation prepared the note and mortgage at plaintiff's domicile in Chicago, and, if Snelling's testimony is to be believed, plaintiff sent a representative with these documents to Shreveport for the purpose of assisting Wallace in perpetrating a fraud upon his creditors. Under these circumstances, it would appear most unreasonable to conclude that if Wallace had an intent that the note and mortgage constituted a sham and worked a fraud upon his creditors, he would have sought the assistance of plaintiff, having one of its representatives sent from Chicago to Shreveport for that purpose.
The testimony, moreover, shows that the note was delivered to plaintiff soon after its execution. If, however, it could be conceded that Wallace initially intended to perpetrate a fraud in executing the note and mortgage, it would not necessarily follow, and the testimony herein shows that it did not follow, that such purpose existed a year later when a written pledge of the note and the mortgage were executed and signed by both Mr. and Mrs. Wallace, the latter being the one purportedly to be protected in the alleged fraud. The execution of the guarantee of the corporation's indebtedness to plaintiff and the pledge are facts wholly inconsistent with any pretense of fraud. The testimony of Snelling is that of one vitally concerned with this litigation and its outcome.
By way of an attack by defendants Huss and Snelling upon the validity of plaintiff's pledge, certain discrepancies are pointed out, in brief and in argument, between the recitals of the note and of the mortgage. For instance, while the note is payable to bearer, as the act of mortgage declares, the mortgage recites that the mortgagors were indebted unto Thomas A. Snelling in the sum of $25,000.00 for reimbursement of which the note was made to the makers' order and by them endorsed in blank. The *199 record discloses, however, that the mortgagors were not indebted unto Snelling; nor did they deliver the note to him.
The defense is urged, therefore, that no debt was due to Snelling, the nominal mortgagee. The rule, however, is well established in the jurisprudence of this State that the validity of such mortgages is not affected by the fact that no debt is owed to the nominal mortgagee. Richardson v. Cramer, 28 La.Ann. 357 (1876); Commercial Germania Trust & Savings Bank v. White, 145 La. 54, 81 So. 753, 754 (1919).
In the latter case, it was pointed out that a mortgagor may make a mortgage in favor of a nominal, or straw, mortgagee, and then negotiate the note secured by the mortgage. In this connection, the court observed:
"Usually, in such cases, the note is made to the order of the maker, and is by him indorsed in blank, and the mortgage is made in favor of the nominal mortgagee and of all future holders of the note; and that is precisely what White did in this case. Burke, the vendor, who figured in the act as mortgagee, was only nominally such, since the price of the sale had been paid to him in full, and therefore nothing was due him for which a real mortgage could have been given."
See, also: Schepp v. Smith, 35 La.Ann. 1 (1883).
The practice of drawing collateral mortgages in favor of nominal mortgagees is recognized as commonplace. For instance, in 34 Tul.L.Rev. 800, 808, in a comment entitled "Mortgages to Secure Future Advances," it is stated:
"The Louisiana mortgage to secure future obligations is commonly referred to by the practitioner as a `collateral' mortgage and takes the form of a notarial act whereby the mortgagor acknowledges indebtedness for the amount of the mortgage note to future holders. The mortgage is recorded in favor of a nominal party, who, on behalf of the future holders, accepts the mortgage note secured by the property of the mortgagor. Once created, the collateral mortgage may serve as a mortgage for future use in two ways. First, the issuance of the mortgage note to subsequent creditors will secure the debt of the mortgagor without execution and recordation of new acts of mortgage each time the note is issued. Second, once in the hands of a creditor the mortgage note may be used as security for future advances up to the amount of the recorded mortgage."
In a footnote to the above comment, there is this observation:
"It is not necessary that there be a debt owed the nominal mortgagee. When the note passes to owners as evidence of a debt, the mortgage to secure payment attaches. Richardson v. Cramer, 28 La.Ann. 357 (1876). It is not essential that the mortgage should express on its face that it was given to secure future debts; it may be described as a security for existing debts, and yet used to protect those which, in the contemplation of the parties, were to be created at a future time. Collins v. His Creditors, 18 La. Ann. 235 (1866); Pickersgill & Co. v. Brown, 7 La.Ann. 297 (1852)."
In 25 La.L.Rev. 789, 792-793, in a note entitled "Security DevicesRanking of Collateral Mortgage Securing Reissued Mortgage Note," it was stated:
"On the other hand, where the mortgagor anticipates his future borrowing may be from different persons he may choose to draw his security in the form of a collateral mortgage, a creature of practice which has been sanctioned by the jurisprudence. Usually, the mortgage is drawn in favor of future holders and recorded in the name of a nominal mortgagee. The note identified with the mortgage may then be pledged as collateral security for obligations, and though the obligation be extinguished *200 and the mortgage note returned to the maker, the existence of the mortgage remains unaffected. Subsequently, contrary to the result of a similar transaction based upon the ordinary conventional mortgage, the mortgagor is free to reissue the mortgage note as security for other obligations. Undeniably, the mortgagor could accomplish the same result by issuing separate mortgages to secure later debts after paying earlier debts or otherwise extinguishing other mortgages; the collateral mortgage allows him to accomplish the same thing at much less expense and trouble. At any given time, the pledgee of the mortgage note is allowed to enforce the mortgage only to the extent of the outstanding obligation for which the mortgage note is then pledged."
In a footnote to the foregoing "Note," citing Richardson v. Cramer, supra, it is stated:
"Whether the mortgagor was indebted to the nominal mortgagee is immaterial."
Other discrepancies between the act of pledge and the endorsement of the note are urged as affecting the validity of plaintiff's pledge. While the mortgagors' endorsement of the note recites, "Pay to the order of NATIONAL ACCEPTANCE COMPANY OF CHICAGO" (emphasis supplied), the pledge of the note and mortgage, as shown by the language of the written guarantee is to National Acceptance Company of America. It may be noted, however, that the domicile of plaintiff is in Chicago.
It is immaterial that the Wallaces' endorsement of their bearer note to the order of plaintiff incorrectly designated plaintiff as National Acceptance Company of Chicago rather than National Acceptance Company of America. The note, payable to bearer, was transferable by delivery. LSA-R.S. 7:30. Special endorsement of such a bearer instrument does not prevent its further negotiation by delivery. LSA-R.S. 7:40. Moreover, an erroneous endorsement might have been ignored and might even have been struck out as unnecessary to plaintiff's title. LSA-R.S. 7:48. These principles were recognized in General Contract Purchase Corp. v. Doyle (La.App.) 56 So.2d 432, 435 (Orl.1952), wherein it was stated:
"We are in full accord with appellee's contention that under the circumstances of the case plaintiff is not limited to a reliance upon the endorsement to make out his title and ownership of the note. The note being payable to bearer, ownership passed upon mere delivery, and no authentic evidence of the transfer was necessary in this executory proceeding.
"Under LSA-R.S. 7:48, the holder may at any time strike out any endorsement which is not necessary to his title; then, may he not ignore the endorsement entirely, and predicate his title to the note on its delivery to him and his possession thereof?
"`* * * The plaintiff is not bound to deduce or claim title to the note through the indorsement appearing thereon. This indorsement has full effect by treating it as intended to secure the liability of the payee as an indorser. It is not to be treated as the mode or medium through which the plaintiff acquired title. Plaintiff may rely for title upon his possession and the delivery to him (of which possession is evidence), and is not bound to be considered as having acquired the property in the note by or through the indorsement thereon. * * *'"
Further complaint is urged to the failure of the mortgagors to deliver the note to the nominal mortgagee. This failure is not significant, as lack of such delivery does not render the mortgage null. Roberts v. Bauer, 35 La.Ann. 453 (1883); Hammond State Bank & Trust Co. v. Broderick, 179 La. 693, 697, 699, 154 So. 739, 740-741 (1934).
*201 Thus, as soon as the note was delivered in pledge and thereby negotiated to plaintiff, it became evidence of a valid debt owed by the mortgagors as the result of their written guarantee of the accounts due plaintiff by the Capitol Sash & Door Company, Inc.
For the reasons set forth, the execution of the note and mortgage and their pledge, upon the faith of which plaintiff made advances and loans, amounting to $36,743.15 at the time of trial, the conclusion is inescapable that plaintiff is the pledgee of the note and mortgage.
Remaining for consideration, however, is the effect, if any, to be accorded the cancellation of plaintiff's mortgage effected by court order.
The statutory rule is that:
"Inscriptions of mortgages and privileges are erased by the consent of the parties interested and having capacity for that purpose; this consent to be evidenced by a release, or by a receipt given on the records of the court rendering the judgment on which the mortgage is founded."
LSA-C.C. Art. 3371.
The rule is well established that a fraudulent cancellation of a mortgage is ineffective so far as the rights of the holder of the mortgage are concerned. Levy v. Desposito, 133 La. 126, 62 So. 599 (1913); Gallagher v. Conner, infra; Horton v. Cutler, infra; Caumont v. Hickey (La.App.) 165 So. 488 (Orl.1936).
Thus, the principle is well settled in this State that the wrongful cancellation of a mortgage without the knowledge and consent of the holder of the mortgage note does not deprive such holder of his security, even with regard to a third party dealing with the mortgaged property on his faith in the public records. Zimmer v. Fryer, 190 La. 814, 183 So. 166, 167 (1938); Freeland v. Carmouche, 177 La. 395, 148 So. 658, 661 (1933); Gallagher v. Conner, 138 La. 633, 70 So. 539 (1915); Horton v. Cutler, 28 La.Ann. 331 (1876); Lacour v. Ford Investment Corporation (La.App.) 183 So.2d 463, 466 (4th Cir. 1966).
In Zimmer v. Fryer, supra, it was pointed out that:
"The doctrine that a person in good faith buying real estate, or acquiring a mortgage or lien on it, may rely upon the public records in determining the ownership of the property, and its freedom from mortgages or liens, does not protect one who, in good faith, buys real estate or acquires a mortgage on real estate on which a prior mortgage has been cancelled fraudulently or without the consent of the holder of the mortgage or of the mortgage note or notes. The Civil Code, in articles 3371 and 3372, declares that a mortgage or lien can be cancelled only with the consent of the holder of the mortgage or mortgage note or notes, or by virtue of a judgment rendered against him, ordering the cancellation." (Emphasis supplied.)
In Freeland v. Carmouche, supra, the court reviewed the decisions on this subject and stated:
"The rule seems arbitrary, but it is now well settled by the decisions of this court that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record.
See the authorities therein cited.
The jurisprudence was again reviewed in Lacour v. Ford Investment Corporation, supra, where the observation was made that:
"In contradistinction to popular legal opinion, the law of registry does not create rights, but instead makes them effective against third persons. If an act of release of mortgage constituted irrebuttable proof of its own validity irrespective of forgery or material alteration, third *202 persons would be fully protected in acquiring property in sole reliance on the public records. However, if this were so, no title to real property would be safe, since it could be divested from its true owner through a forged or altered document by means of the mere recordation thereof. Consequently, we are convinced that the rule pronounced in the Zimmer case is necessary for the security and protection of titles to immovable property."
That the wrongful cancellation was pursuant to a judicial decree obtained by fraudulent means does not affect the application of the rule. As heretofore noted, the proceedings leading to the judgment directing the cancellation were without plaintiff's knowledge or consent. It is elementary that, as a general rule, one not a party to an action, particularly where he has no notice or knowledge of the pendency of the action, is not bound or affected by a judgment rendered therein. A contrary conclusion would violate the constitutional provisions with reference to due process, as contained in the Bill of Rights of the Louisiana Constitution, Article 1, Section 2, which declares that:
"No person shall be deprived of life, liberty or property, except by due process of law." (Emphasis supplied.)
(Unquestionably, a mortgage is property.)
In this regard, we had occasion to point out in King v. Brown (La.App.) 115 So. 2d 405, 410 (1959):
"An opportunity to be heard and to defend are essential elements of a fair hearing and of due process. Due process of law means in the due course of legal proceedings and according to the rules and forms which have been established for the protection of private rights and refers to a law which hears before it condemns, and which proceeds upon inquiry and renders judgment only after trial."
It was early announced, with reference to a wrongful cancellation pursuant to an order of court, in Dreux, Ex'r, v. Ducournau, 5 Mart. (O.S.) 625 (1818), that:
"Although the register of mortgages certifies that the land is free of mortgage, if it appear that the order of court, by which a mortgage was ordered to be cancelled, was obtained in the absence of the mortgagee [meaning without his being a party to the proceeding], the purchaser is not compelled to pay the price."
Hence, no cancellation or erasure of plaintiff's mortgage from the record has been effected and the wrongful attempt to do so may be completely ignored. Pertinent is the observation made in Bornes v. Vernon (La.App.) 64 So.2d 18, 20 (1st Cir. 1953):
"It has been consistently held under Articles 3371 and 3372 of the LSA-Civil Code that a mortgage or lien can be cancelled only with the consent of the holder of the mortgage or mortgage note or notes, or by virtue of a judgment rendered against him ordering the cancellation. Zimmer v. Fryer, 190 La. 814, 183 So. 166; People's Homestead & Savings Ass'n v. Worley, 191 La. 453, 185 So. 880." (Emphasis supplied.)
Nor do we find any basis for concluding the court was without jurisdiction, by reason of Mrs. Wallace's absence or nonresidence, to recognize and to order the enforcement of plaintiff's mortgage. LSA-C.C.P. Art. 5091 provides that where a court has jurisdiction over the person or property of a defendant, it shall appoint an attorney at law to represent the defendant if the defendant is a nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has made no general appearance. The property involved is located within the jurisdiction of the trial court. The mortgage, evidenced by an authentic act, imports a confession of judgment. Under such circumstances, it was *203 held in Hibernia Bank & Trust Co. v. Lacoste, 190 La. 162, 182 So. 314 (1938), that, where a judgment in rem was sought, service of citation upon the mortgagor personally was unnecessary and that the court had jurisdiction, although the property had not been seized or attached and service was had on a curator.
Defendant Huss invokes the rule that where a loss must be borne by one of two innocent parties the loss must be borne by the one whose conduct occasioned it. This rule presupposes negligence upon one of the two innocent parties. There is, however, no basis for application of the rule here. No negligence was shown or established on the part of plaintiff in connection with the cancellation of its mortgage.
As an alternative proposition, defendant Huss, as an alleged third possessor of the property involved, so far as concerns plaintiff's mortgage, seeks to have recognized, through subrogation under LSA-C.C. Art. 2161, his claims for payments made on a mortgage ranking that of plaintiff's mortgage. He further seeks recognition of his claim predicated on the enhanced value of the property resulting from improvements made thereon. Plaintiff counters with the contention that defendant Huss is not a third possessor under LSA-C.C.P. Art. 2703 inasmuch as he assumed payment of the prior mortgage as a part of the purchase price of the property. The point is, however, that he is a third possessor as concerns plaintiff's mortgage, the payment of which he did not assume.
The record discloses that Huss made an initial payment on the first mortgage June 28, 1963, of $276.79, represented in two checks of $74.15 and $202.64, respectively, and has since made monthly payments of $202.64 each to the date of trial on October 8, 1965, $30.02 of the amount of each of the monthly installments being for the payment of taxes. For the amounts of these payments, as well as all sums subsequently paid on the first mortgage covering the property, Huss is legally subrogated to the rights, liens, and privileges of the holder of the first mortgage. The payments made were part of the purchase price of the property. LSA-C.C. Art. 2161 provides that:
"Subrogation takes place of right:
* * * * * *
"2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged."
With reference to the improvements made, the record establishes that defendant Huss purchased, and caused to be installed in the residence upon the property, a new air-conditioning unit at a price of $1,135.44, and caused to be performed permanent landscaping services at a cost of $154.78. While the claim for the enhanced value of the property may not exceed the cost of the improvements made, it is reasonable to conclude, and we find no basis not to conclude, that the enhancement was at least equal to the amount of these costs. Therefore, to the extent of these items, defendant Huss' claims should be recognized.
Neither the payments on an old air-conditioning unit which was discarded and the repairs thereto, nor the payment of insurance premiums on the improvements situated on the property, are shown to have enhanced the value of the property and, hence, cannot be allowed.
Finally for consideration, with reference to plaintiff's claim, is the judgment in its favor against defendant Thomas A. Snelling for damages. It may be noted that damages were claimed only as an alternative proposition. Since plaintiff's mortgage is maintained in full force and effect, despite Snelling's actions upon which the purported cancellation was predicated, there is no basis on which plaintiff's judgment for damages against him could be sustained.
*204 Nor, at this stage of the proceedings, does the record establish what damages, if any, resulted to Huss through the actions of either Snelling or Mrs. Wallace, or what damages, if any, he sustained which would be recoverable through Mrs. Wallace's warranty of title. Nor would it be possible, at this time, for him to recover judgment against Mrs. Wallace personally, since she has not been personally served and has made no personal appearance.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiff, National Acceptance Company of America, against the defendant Mrs. Demma S. Wallace, in rem only, and against defendant Erwin A. Huss, recognizing and maintaining plaintiff's pledge upon that certain promissory note in the sum of $25,000.00 executed by Chalmers C. Wallace and Mrs. Demma S. Wallace February 17, 1961, and upon the mortgage of the same date with which it was paraphed and identified and as recorded in Book 574, page 459 of the mortgage records of Caddo Parish, Louisiana; and, accordingly, that plaintiff, National Acceptance Company of America, have and recover further judgment against the defendant Mrs. Demma S. Wallace, also in rem and as affecting only the property hereinafter described, for the full sum of $25,000.00, together with 15% additional thereon as attorneys' fees; and for the payment thereof the property mortgaged, described as Lot 131, Brookwood Subdivision, Unit No. 3, Caddo Parish, Louisiana, according to plat recorded in Conveyance Book 650, page 631 of the conveyance records of Caddo Parish, Louisiana, commonly known as 1864 South Brookwood Drive, Shreveport, Caddo Parish, Louisiana, together with all the improvements thereon, be seized and sold in accordance with law, subject to the first mortgage encumbering the property.
It is further ordered, adjudged, and decreed there be judgment herein in favor of defendant Erwin A. Huss against plaintiff, National Acceptance Company of America, recognizing Huss' subrogation to the rights, liens, and privileges of the mortgagee upon the described property to the extent of the payments made by him upon the first and ranking mortgage, as well as his claim of $1,290.22 as the enhanced value of the property resulting from the improvements made thereon, and that, from the proceeds of the sale of the property, he be paid the amounts thereof by preference and priority over plaintiff's claim and mortgage.
It is further Ordered, Adjudged, and Decreed that the rights of defendant and third-party plaintiff, Erwin A. Huss, against Mrs. Demma S. Wallace upon her warranty of title and for damages be, and the same are hereby, specially reserved, as are his rights for damages against the defendant Thomas A. Snelling.
Plaintiff, National Acceptance Company of America, and defendant Erwin A. Huss are assessed, in equal proportions, with the costs, including the cost of this appeal.
Reversed and rendered.